## Isaac H. Holden *versus* Asa Pike & al.

If funds be put into the hands of a person by one of several interested in procuring the discharge of a mortgage, to be applied for that purpose, and he agrees so to apply the same, the others agreeing to furnish him with the remainder of the necessary funds, but failing so to do ; those failing to perform on their part, cannot, by bill in equity, compel such person to apply the funds belonging to others to the discharge of such mortgage.

If the mortgagor, for an adequate consideration, conveys a part of the mortgaged premises, and afterwards conveys the remainder to another person, the estate last conveyed, if sufficient for that purpose, it would seem, in equity, is charged with the redemption of the mortgage.

The general rule is, that if it be for the interest of the assignee of a mortgage, that it should be upheld, it will, in a court of equity, be considered as still subsisting.

This was a bill in equity in favor of Isaac H. Holden against Asa Pike and Jonathan Pike, and was heard on bill, answer and proof.

The parties and witnesses all lived in the State of Rhode Island. The controversy grew out of the purchase of land in the county of Aroostook in this State. What of law there is in the case, will be understood sufficiently from the facts stated in the opinion of the Court.

The case was argued by

*A. G. Jewett*, for the plaintiff; — and by

*Hobbs*, for the defendants.

The opinion of the Court was drawn up by

TENNEY J. — On February 23, 1835, the State conveyed to Randal Whidden several lots of land in the town of Amity, amounting in the whole to about 17,500 acres, in fee simple, on condition that the grantee should pay, when payable, his four notes of hand for the sum of $2577,25, each, (which came to maturity in one, two, three and four years from their dates) and should cause twenty of the lots to be settled within five years from the time of the conveyance. On the 5th of August, 1835, Whidden conveyed by several deeds in fee with covenants of warranty, five-eighths of the land to Lucius Doolittle, and three-eighths to Christopher V. Spencer, subject to the condition of causing twenty of the lots to be settled as mentioned in the deed from the State to Whidden, taking their joint bond, that they should pay his notes to the State in the proportion of five-eighths by Doolittle and three-eighths by Spencer, according to their tenor, secured by a mortgage from each, of the part sold to them respectively. On October 15, 1835, Doolittle conveyed by deeds with warranty, one-eighth of the land to the complainant, and one-eighth to one Turner, subject to the condition of causing twenty lots to be settled, receiving at the time the full consideration therefor; and on the 10th of November, 1835, conveyed the remaining three-eighths belonging to him, to Daniel Wood, Brayton Gardner, and Whipple Phillips, one-eighth to each, subject to the condition last before named, and in consideration, took their joint bond, to take up five-eighths of Whidden's notes to the State. On November 21, 1835, Spencer conveyed to the defendants by deed with covenants of warranty, subject to the condition of settling twenty lots, one-eighth of the land, and received the full consideration. Subsequent to this, Spencer sold one-sixteenth to Nathaniel Perkins, and purchased of Phillips the part sold to him by Doolittle, agreeing to assume Phillips'

liability upon the bond given by him, Wood and Gardner to Doolittle. In March, 1838, only one of Whidden's notes to the State had been cancelled, and the interest of one year only had been paid upon the others. On the 17th day of March, 1838, Spencer, Wood, and Gardner entered into a sealed contract with the defendants for the purpose of raising a fund, with which to discharge the liabilities, which then existed on account of the land, and to obtain a valid title thereto; at the same time Spencer delivered to the defendants his notes, amounting to $4000, and executed and delivered a deed, with covenants of warranty, to the defendants, of ten thirty-second parts of said land in pursuance of the contract. The notes were not made use of. Wood and Gardner afterwards *furnished certain sums of money and put into the hands* of the defendants, or paid it upon Whidden's notes to the State. On the 15th January, 1839, the defendants paid up the balance due upon those notes of Whidden, and took an assignment of Doolittle and Spencer's bond and mortgages to him, running to them, their heirs and assigns, having at the same time, and previously, paid to Whidden certain sums for damages, taxes, interest, services and expenses incurred by him to prevent a forfeiture of the land to the State. On January 13, 1840, the defendants took from Perkins a quitclaim deed of one-sixteenth of the land, and on the 14th May, 1841, a quitclaim of two-eighths from Daniel Wood, who had previous thereto, purchased one-eighth of Gardner. Spencer has paid nothing upon the bond given by him and Doolittle. Wood and Gardner have not paid the whole of their respective portions of the sum, which they undertook by their bond to Doolittle to pay, and the additional sum paid the defendants to Whidden for taxes, services, expenses and interest. The bill seeks for a release from the defendants of all claim to the one-eighth conveyed by Doolittle to the complainant, who insists, that the mortgages given by Doolittle and Spencer to Whidden have been extinguished, and that in equity his interest in the land is free from any charge arising from those mortgages, on the ground, that by the written contract of

March 17, 1838, before mentioned, the defendants, upon the terms and conditions therein mentioned, agreed, that they would take charge of certain funds placed in their hands, and furnish money, if necessary, and faithfully apply the whole of the funds so furnished to the payment and discharge of the notes of Whidden to the State, and that they in pursuance of the agreement, did pay said notes, and thereby extinguish the mortgage to Whidden; and also on the ground, that by virtue of an agreement between the complainant and the defendants in consideration, that the former was active in causing the written contract between Wood, Gardner and Spencer to be executed with the defendants, the latter paid the notes of Whidden to the State and thereby extinguished the mortgage.

The defendants in their answer, admit that the several notes, bonds, conveyances, mortgages and assignments were made and given as before mentioned, but deny, " that they became parties to a contract as recited in the bill, or received funds sufficient to extinguish the mortgage held by said Whidden, or applied the same in extinguishing the same, or were bound by any contract, or that it was their duty so to do." That when only one of Whidden's notes to the State had been paid, and two others were overdue and unpaid and the interest upon all of them was unpaid, Spencer declared himself unable to meet his engagements, and requested the assistance of the defendants in obtaining the means for relieving the land from the incumbrance, and prevent a forfeiture thereof, and by an arrangement for that purpose, Spencer agreed to furnish about two thousand dollars in money, on receipt of which the defendants were to indorse, and Spencer was to negotiate these notes of Spencer for the sum of four thousand dollars, and apply the proceeds thereof, and the two thousand dollars to be furnished by Spencer, to the discharge of Whidden's notes. But Spencer neglected to furnish the sum of $2000, and the defendants did not indorse and Spencer did not negotiate the notes, but the defendants now hold them ready to deliver to Spencer on his giving up the receipt taken by him therefor from them. And the defendants say, in their answer, that of

the land conveyed to them by Spencer, March 17, 1838, they hold two-eighths thereof in trust for him, his heirs and assigns, subject to the repayment to them of his proportion of the large sums, which they have been compelled to pay to save the said estate from forfeiture and to redeem the same from taxes for which it had been sold, and for all the expenses attending the management thereof, and a just compensation for the defendants' services therein. And that the other two thirty-two parts conveyed to them in the same deed, for the benefit of the defendants and Daniel Wood, were for and on account of expenses and inconveniences arising from his neglect in fulfilling his agreement with Whidden. And they further allege in their answer, that they took the assignment of the bond and mortgages for their security for the money paid and advanced by them beyond their proportionate interest in the land, and claim to have the same upheld.

It is insisted for the complainant, that the mortgage was discharged from the funds, which Spencer, Wood and Gardner furnished for that purpose, and that this appears from the contract of March 17, 1838. By that it is obvious, that with a view to obtain means to prevent a forfeiture to the State, and to cause a discharge of the mortgage to Whidden, Spencer contracted with the defendants to convey two-eighths of the land then in his hands, as security for their indorsement or guaranty of his paper for a sum not exceeding \$4000, and thereby enabling him to raise money. Spencer, Wood and Gardner contracted, that they would each severally furnish with the proceeds of the notes, to be signed by Spencer, and indorsed or guarantied by the defendants, and *otherwise* their respective proportions of a sum sufficient to pay and take up all demands in favor of the State against the land, whether due or not, and the probable expense of making the payment; and the defendants, or either of them, were empowered to redeem the forfeiture, if the lands had been forfeited to the State, Whidden or others, or return with the funds, in their discretion; and they also engaged to make good to the defendants any amount, which they might expend by reason of the neg-

lect of the other parties, to take up the demands, when they became payable, as they were bound to do. The defendants agreed to take charge of the funds "as aforesaid," and to truly apply them or cause them to be applied as they were authorized to do by the instrument. Spencer furnished the paper to be indorsed and conveyed the ten thirty-two parts of the land according to the contract; but provided otherwise no portion of the fund, which the agreement obliged him to do.

The answer states, that the proportion to be paid by him was about $2000, and the account annexed to the deposition of Burr, put in by the complainant, shows that it was not far below that amount. The notes were not indorsed by the defendants, but remain in their hands, which they offer in their answer to surrender on obtaining their receipt therefor.

The whole fund necessary to extinguish the mortgage was intended to be provided; this was to be done by Spencer, Wood and Gardner, by the assistance of the defendants, which they supposed they had obtained. The defendants were not bound by the written agreement to provide the fund, any further than their indorsement of Spencer's paper might produce it; but the other parties to the contract were obliged to furnish all which might be necessary beyond the proceeds of those notes, which could not exceed $4000, and would probably fall short; by making up this balance, they were doing only what their previous engagements and covenants required of them; and the acts to be performed by them were entire; a failure in any respect would be a violation on their part of the contract; from the nature of the subject matter, the obligations of the two parties were not independent; the defendants took upon themselves the agency to apply the funds; they could not enter upon that agency unless they were supplied; there was no agreement, that they would act in the application of a part only of the funds; the partial payment would be productive of no advantage; the two-eighths of the land conveyed at the time by Spencer was no part of the fund, but security to the defendants for a liability, which they were to assume, and when the liability should be discharged, they were

bound to re-convey, or to restore in some manner the value of the land ; this security had no reference whatever to the portion to be paid by Spencer, Wood and Gardner, as a part of the fund. It is not pretended that the fund failed to be produced, by the omission of the defendants to indorse the paper ; the correspondence between them and Spencer immediately after shows manifestly, that Spencer was unable to provide the balance. The contract was not carried into effect, and the failure cannot be imputed to any neglect of the defendants, to fulfil their part of the duties ; they were free and at liberty, notwithstanding the agreement, to take any proper measures to protect their interest in the land, in the same manner they could have done, had it not been executed.

It is again contended that it is clearly proved by Spencer's deposition, that the defendants expressly contracted with him to make up the balance of his part of the money, after the agreement of March 17, 1838 ; that this deposition is sustained by the conduct of the defendants, before January 15, 1839, by the depositions of Carpenter and Gardner, and by the account annexed to Burr's deposition.

The bill charges no other contract, between Spencer and the defendants, than the one under hand and seal, dated March 17, 1838. The answer denies any agreement, requiring of the defendants to advance for Spencer or others this part of the fund. No proof of such an agreement is found in the depositions of Carpenter and Gardner ; these refer to the written contract and the negotiation which resulted therein. It is not perceived that the conduct of the defendants will admit of such a deduction as is contended for, so far as it is disclosed in the bill, answer and proof. The account annexed to Burr's deposition, is evidently made out, after the assignment of the mortgage, and refers to the amount belonging to Wood, Gardner and Spencer, each to pay, by virtue of their previous contracts with Doolittle and Whidden, and not of those with the defendants, excepting for the expenses, interest and taxes, paid to Whidden, and the defendants' own expenses. The deposition of Spencer, standing alone, would perhaps indi-

cate, that there was a verbal agreement between him and the defendants, that they were to make up the deficiency after receiving the proceeds of the notes to be indorsed by them, but is sustained by no other fact in the case, is inconsistent with the complainant's other proof, and repugnant to the letters written by Spencer after the agreement, which he refers to, must have been made.

It is insisted for the complainant, that a contract between the parties to this bill, that the defendants should extinguish the mortgage, is distinctly charged, evaded and not denied in the answer, and proved by the depositions of Carpenter and Gardner, and rendered almost certain by the written agreement of the 17th March, 1838. Such a contract is charged in the bill; but the answer denies, "that the defendants became parties to a contract as recited in the bill, or received funds to extinguish the mortgage held by said Whidden, or applied the same in extinguishing the same, *or were bound by any contract, or that it was their duty so to do.*" Gardner was interested to free the land from exposure to forfeiture, to prevent a foreclosure of the mortgage, and was one, who was bound to provide the means, and was a party to the written contract of the 17th March, 1838. Carpenter was the counsel of all who were interested, was consulted by them, and fully advised them touching the matter. Nothing is found in their depositions, which we are able to construe into proof of any contract between the complainant and the defendants. Besides, the written contract was sufficient, if all the stipulations had been carried into effect, to have extinguished the mortgage, and have prevented a forfeiture of the land. This contract was brought into existence, partly by the activity of the complainant; he executed it in behalf of one of the parties and knew its terms; he was interested to have its object accomplished, as it would give a perfect title to him of his part of the land; but he paid no consideration, that it should be made, and took upon himself no liability under it, or otherwise. There was no good reason for his desire, that the defendants should bind themselves by a promise to him, to extinguish the

mortgage, upon the consideration only of his activity in causing the written contract, when that was of itself sufficient for the whole purpose, and rendered every other unnecessary, if this had been carried into operation. If it failed through the fault of the defendants, they would have been liable for all the damages; if through the neglect of the other contracting party, the defendants would have been relieved from their obligations therein assumed; and the activity of the complainant in causing a contract, which in such a case would prove abortive, could not be a very strong inducement for them to promise the complainant to pay large sums of money, which were necessary in order to obtain a title.

The complainant again contends, that as between the parties to this bill, the defendants were bound after the contract of the 17th March, 1838, either to have extinguished the mortgage, or to have given him notice that it was not done, in order that he might have been in the situation in which he was, before that contract. There was no contract between these parties, and the defendants could not be bound to give the complainant notice of the failure of one to which he was a stranger. The assignment of the mortgage has not operated to his prejudice; he is now admitted by the answer, and otherwise proved to be a tenant in common with the defendants and others, and holds the same rights in reference to the mortgage in their hands, which he did when in the hands of the mortgagee before the assignment.

At the time of the assignment of the mortgage to the defendants, they were under no contract to extinguish it; they were the owners of three-sixteenths only of the land, which they held under warranty deeds from Spencer; and the mortgage cannot be considered as having been extinguished by the payments then made.

It is finally contended, that as the defendants received quitclaim deeds of two-eighths of the land from Daniel Wood, and one-sixteenth from Nathaniel Perkins, and also received from Spencer a conveyance of one-sixteenth, besides the two-eighths which were for the security of indorsing the notes of $4000,

and that these three-eighths are the part, which was conveyed by Doolittle to Wood, Gardner and Phillips, by deeds subsequent to that, to the complainant, the interest of the latter stands disincumbered of the charge by virtue of the mortgage to Whidden.

It may be true, that when the mortgagor sells a part of the mortgaged premises for a valuable consideration, the mortgage should be satisfied from that which remains in the mortgagor, if sufficient; and if the mortgagor sells the last portion subsequently to the former, the last grantee having notice, actual or constructive, of the mortgage, and the first conveyance of the mortgagor, the equities of the two grantees of the mortgagor are not equal; and they are not bound to contribute rateably to discharge the incumbrance, but the part last sold must be exhausted before resort can be made to the other. *Gill* v. *Lyon*, 1 Johns. Ch. R. 447; *Clowes* v. *Dickinson & al.* 4 Johns. Ch. R. 235. But the doctrine involved cannot apply to this case as it now stands. The bill does not allege, that the part of the land held by the defendants, which it is insisted should be charged with the whole incumbrance, was of sufficient value for that purpose at the time of the assignment. It does allege, that prior to the making of the contract of the 17th March, 1838, it was the duty of the parties thereto, to pay the notes of Whidden to the State, and remove the incumbrance as a part of the consideration to be paid by them for their interest in the lands, the parties being the sole owners of the remaining six undivided eighth parts of the same; and that the lands were considered of greater value than the amount of said incumbrance. The defendants do not admit or deny this allegation, in their answer; the proof does not show the value of the lands held by the defendants, at the time of the assignment of the mortgage, nor does it disclose the value of them, before the execution of the contract referred to; the relief sought by the bill is therein put upon other and distinct grounds. We have seen, that when the defendants paid the mortgage debt, the charge was not intended to be extinguished, but to be kept on foot. The subsequent releases

of Perkins and Wood to them, could not of themselves defeat that intention. They stand in the place of the mortgagee, before the assignment, and the charge is upon the whole premises mortgaged. They have not assumed the personal obligations of those to whom Doolittle last conveyed. It is for the interest of the defendants, that the mortgage should be upheld, and they are entitled to have it done. *Gibson* v. *Crehore,* 3 Pick. 475 ; *Hatch* v. *Kimball,* 14 Maine R. 9.

The complainant will be entitled to a release from the defendants of the part of the land belonging to him, on payment of such a sum as may be justly due ; but that remedy he has not sought in his bill ; he has simply demanded of the defendants a release, which has been refused ; he has neither paid, nor tendered the money due for that purpose ; neither has he offered evidence on any ground, that nothing was due ; he did not, before the commencement of the suit, request the defendants to render a true account of the sum due, nor offered to pay such sum in his bill, as he was required to do in order to entitle himself to a decree. Rev. Stat. c. 125, $ 16 and 17.

*Bill dismissed with costs for the defendants.*