## BELL & a., Administrators, v. WOODWARD & a.

Where there are two mortgages on land, and a purchaser of the equity buys in the prior mortgage and takes an assignment, that mortgage is not extinguished, but will be upheld as a subsisting security in the hands of the assignee against the secured mortgage.

The owner of such mortgage and equity of redemption may convey them, and the mortgage will not be extinguished by the conveyance.

If the owner of such mortgage and equity of redemption convey the land by quitclaim deed, and at the same time deliver to the purchaser the mortgage deed and note, this will convey the mortgage and mortgage debt, as well as the equity of redemption.

Mary Hale purchased an equity of redemption, subject to two mortgages made by a former owner, and bought in the older of the two mortgages. She afterwards gave a quitclaim deed of the land to the defendant, and delivered over to him the mortgage deed and note; the note had not been paid, but when produced had written across the face these words, " Cancelled by Mary Hale." There was no evidence to show when, on what consideration or bargain, or for what purpose these words were written across the note. — *Held*, that the intention of the parties to this transaction must be presumed to have been to keep the mortgage on foot; that this intention was consistent with equity, and would be carried into effect against the holder of the second mortgage.

WRIT OF ENTRY, commenced by Joseph Bell, the intestate, and prosecuted by the plaintiffs, his administrators, against Joshua Woodward, James Woodward, and Joshua Henry Woodward. James Woodward pleads sole tenure in himself; the other tenants severally disclaim.

The demandants claim under a mortgage from Joshua Woodward, to secure two notes to the intestate, amounting to seventeen hundred dollars, dated February 28, 1842, at which time Joshua Woodward owned the land, subject to certain mortgages.

On the 9th of June, 1843, Joshua Woodward conveyed the premises to James Woodward, the defendant.

On the 23d of November, 1840, Joshua Woodward mortgaged the premises to Philip Goss, and Martha Goss, his wife, to secure a note for six hundred dollars and interest.

On the 17th of February, 1846, the Goss note and mortgage were purchased by Phineas Spaulding, and duly assigned to him. On the 9th of June, 1843, James Woodward mortgaged the

premises to Mary Hale, to secure payment of his note to her for about twenty-two hundred dollars ; and on the 29th of August, 1849, the last mentioned note being unpaid, James Woodward quitclaimed the premises to Mary Hale, and on the same day she purchased of Spaulding the Goss note and mortgage, and took from him an assignment of them.

On the 10th of September, 1849, James Woodward paid Mary Hale the amount of the Goss mortgage and the above mentioned mortgage to her, and she reconveyed the premises to him by quitclaim deed of that date, and delivered to him the Goss note and mortgage, which he still holds, and which make part of his case.

The Goss note being produced, has written across the face these words, " Cancelled by Mary Hale."

James Woodward claims to hold the premises until he is paid the amount of the Goss note.

The foregoing facts appeared in a case agreed by the parties, in which it was also agreed that if the court should be of opinion that James Woodward was entitled to hold till the Goss mortgage was paid, the plaintiffs should be nonsuited, saving their right to pay the Goss mortgage, and proceed anew.

*Chapman*, for the plaintiffs.

The title of mortgagor and mortgagee united in Mary Hale, and was absolutely vested in her when she paid the Goss mortgage, so far as James Woodward was concerned.

Mary Hale then held the right in equity of James Woodward, and the mortgage merged, and was thereby extinguished.

She having taken an assignment of the mortgage while holding the equity, extinguished the mortgage debt as to all the world, independently of any other act of extinguishment on her part.

Such would be the effect of the assignment to her, according to the well established rule that " where the legal title by the mortgage becomes united with the equitable title, the mortgage is merged and extinguished." Stated in *Greenough* v. *Rolfe & als.*,

4 N. H. 363, and cases cited; also in *Loud* v. *Lane*, 8 Met. 517.

But Mary Hale might hold the mortgage as against third persons, should justice and equity require the existence of it to protect her title; even if, instead of taking an assignment, she had paid the mortgage debt to Spaulding, and he had discharged the debt and mortgage; and this is the class of cases, and the circumstances attending the cases, that in justice and equity require the exception to, or the modification of the general rule — that is to say, where the act of payment of a mortgage debt in one form or another, by the holder of the equitable title, constitutes a part of his title.

But beyond this, Mary Hale absolutely extinguished the mortgage debt while she held it in her own hands, by an express act of her own. She marked it cancelled by herself, and killed it as to herself and all the world, whatever her rights by law might have been before this act, or however her position, whether such that justice and equity would require its perpetuity or not.

She had paid the note, and holding the equity, her title was complete, and she might have done, and had a right to do, whatever she pleased with the mortgage and note, without affecting her rights or title, or the interest of any one else. And she could be placed in no position to claim its existence, or to be affected by its existence or extinguishment, only upon the event that her grantor of the equity should prove not to have been the owner of the same, to whom she had honestly paid her money; but that some other person should turn out to be the owner of the land, and should claim it absolutely.

But James Woodward had no interest or concern in this mortgage at this time; it did not affect him whether it was extinguished or not; he was a perfect stranger to that transaction, to that title and to the estate, and was in no position, in justice or equity, to claim that it be kept alive, or that it be extinguished, or any thing about it. He had parted with his title, and afterwards took a title by deed from Mary Hale, as any third person would, and whether it be a quitclaim or a warrantee, the effect is the

same in this case, and it does not matter what amount he paid for the farm, or how it is *stated in this case.* He bought the farm of Mary Hale, who, for the purposes of this case, was the owner of it, and had a perfect right to sell it to James Woodward or any body else. She did sell it to James Woodward, and gave him a proper deed of it, and his title is not by virtue of the Goss mortgage, nor can that affect him or his title in any manner whatever. *Converse* v. *Cook & als.*, 8 Vt. 165 ; 4 N. H. 357, and cases cited on page 363 ; *Robinson* v. *Leavitt*, 7 N. H. 252 ; *Cutler* v. *Lincoln*, 3 Cush. 125 ; *Waugh* v. *Riley*, 8 Met. 29. It is here held that a quitclaim deed from the mortgagor to the mortgagee extinguishes the mortgage, and merges.

In 2 Cowen's Report, in the case *James* v. *Morey*, it is held, that· " when a mortgagee purchases, or takes a release of the equity of redemption, the whole estate is vested in him, and the mortgage extinguished, and with it the mortgage debt; and if the release is for only part of the land, the extinguishment operates *pro tanto.*"

*Felton*, for the defendant.

The mortgage to Martha and Philip Goss was executed, acknowledged and recorded before the execution of the mortgage under which the plaintiff claims. Philip and Martha Goss, therefore, would have held the demanded premises, as against Bell, until payment of the mortgage to them ; and their assigns would have the same right. The Goss mortgage was duly assigned to Phineas Spaulding, and by Spaulding to Mary Hale.

Mary Hale, therefore, as assignee, would have been entitled to hold as against Bell, until payment of the Goss mortgage. But she had previously, in June, 1843, taken a mortgage from the tenant, of said premises. She therefore had an interest to protect, by purchasing in the Goss mortgage, and would have held under it, even if she had, in form, paid it, and had it discharged, instead of purchasing it and taking an assignment, as she did. Authorities : *Towle* v. *Hoyt*, 14 N. H. 61 ; *Robinson* v. *Leavitt*, 7 N. H. 73 ; *Gibson* v. *Crehore*, 3 Pick. 475 ; *Heath*

v. *West & a.*, 6 Foster 191 ; *Johnson* v. *Elliott*, 6 Foster 67 ; *Rigney* v. *Lovejoy*, 13 N. H. 247 ; *Downer* v. *Fox & a.*, 5 Washburn 388 ; 2 Story's Equity 379, 380 ; *Willard* v. *Harvey*, 5 N. H. 252 ; *Bailey* v. *Willard*, 8 N. H. 429 ; *Barker* v. *Parker*, 4 Pick. 505 ; *Wilson* v. *Kimball*, 7 Foster 300.

The quitclaim deed from James Woodward to Mrs. Hale did not change her rights, as seems too plain for argument. By the transactions between Mrs. Hale and James Woodward, on the 10th of September, 1849, Woodward was placed in the same position, as respects the Goss mortgage, as Mrs. Hale stood in before those transactions.

The interest of the tenant and the justice of the case both require that the Goss mortgage should be upheld as an existing mortgage, for the tenant's protection, and such must be presumed to have been the just intent of the parties ; and it should be so upheld, according to the principle stated by *Parker*, Justice, in *Robinson* v. *Leavitt*, 7 N. H. 100, and in *Rigney* v. *Lovejoy*, 13 N. H. 252 ; and also by *Bell*, Justice, in *Johnson* v. *Elliott*, 6 Foster 74, and *Heath* v. *West*, 6 Foster 201 ; and by *Eastman*, Justice, in *Wilson* v. *Kimball*, 7 Foster 307, which cases have been before cited.

There is no ground for holding that the Goss mortgage has been at any time merged or extinguished.

PERLEY, C. J. On the 19th of June, 1843, James Woodward had an equity of redemption in the demanded premises, subject to the Goss mortgage for $600, and the mortgage to Mr. Bell for $1700, both made by Joshua Woodward ; and on that day he made another mortgage to Mary Hale, to secure $2200.

On the 17th of February, 1846, the Goss mortgage was assigned to Phineas Spaulding. On the 29th of August, 1849, James Woodward released his equity in the premises to Mary Hale, who then held the land, subject to the Goss mortgage in the hands of Spaulding, and to the mortgage to Mr. Bell. On the same day she purchased of Spaulding the Goss note and mortgage, and took an assignment of them.

Was the Goss mortgage, upon the purchase by Mary Hale, extinguished in her equity of redemption, so that she could not set it up against the subsequent mortgage to Mr. Bell ?

The general rule on this subject is thus laid down in Greenleaf's note to 1 Cruise 239 : " In estates acquired by act of the parties, they merge or not, and mortgages are extinguished or not, according to the intent of the parties, as collected from the deed or the circumstances of the transaction ; and when these furnish no evidence of the intent, from the interest of the parties."

In 4 Kent's Commentaries 102, it is said that " merger is not favored in equity, and is never allowed, unless for special reasons, and to promote the intention of the party. The intention is considered in merger at law, but is not the governing principle of the rule, as in equity."

In *Forbes* v. *Moffat*, 18 Vesey 390, it was held that " a person, becoming entitled to an estate subject to a charge, for his own benefit may, if he choose, at once take the estate and keep up the charge. Upon this subject a court of equity is not guided by the rules of law ; the question is upon the intention, actual or presumed, of the party in whom the interests are united."

*James* v. *Morey*, 6 Cowen 246, states the rule as follows : " At law, where a greater estate and a lesser estate meet, and coincide in the same person and in the same right, without any intermediate estate, the lesser estate is immediately annihilated, or, in the law phrase, is said to be merged. The rule at law is inflexible, but not in equity ; it depends on the implied or express intention of the person in whom the estates unite, whether the equitable estate shall merge or be kept on foot."

So in *Thompson* v. *Chandler*, 7 Greenleaf 377, it is said, " If the purchaser of a right in equity to redeem a mortgage, takes an assignment of it, this shall not operate as an extinguishment of the mortgage, if it is for the interest of the assignee to uphold it."

When the purchaser of an equity of redemption takes an

assignment of a mortgage, it shall or shall not operate as an extinguishment, according as his interest may be, and according to the real intent of the parties. *Gibson* v. *Crehore*, 3 Pick. 475.

In *Robinson* v. *Leavitt*, 7 N. H. 100, this whole subject is treated much at large, and with great ability. The learned judge who delivered the opinion of the court in that case sums up the rule in these terms: " The true principle, I apprehend, is, that where the money due on a mortgage is paid, it shall operate as a discharge of the mortgage, or in the nature of an assignment, substituting him who pays it in the place of the mortgagee, as may best serve the purposes of justice and the just intent of the parties."

The general rule deducible from these authorities would seem to be this : where the title which one acquires in land consists of an equity of redemption, and of a mortgage, the mortgage will be kept on foot and held as a security over the land, or will be regarded as extinguished, as may be required by the justice of the case and the intention of the parties ; the intention of the parties being the governing principle, where that intention is consistent with the justice of the case ; and the intention will be presumed to correspond with the interest of the parties, unless a contrary intention is very plainly expressed, or necessarily implied from the form and nature of the transaction.

And these equitable rules are applied in writs of entry, where that writ is used, as it is in this and some other jurisdictions, to enforce a mortgage security, instead of a bill in equity. *Towle* v. *Hoit*, 14 N. H. 67 ; *Hatch* v. *Kimball*, 16 Maine 149.

If the mortgage to Goss were kept on foot after the assignment to Mary Hale, the payment by her of the money due on it would inure to her own benefit. She would hold the mortgage over the land against the subsequent mortgage to Mr. Bell, until the money which she had advanced for it were repaid to her. But if the Goss mortgage is to be regarded as extinguished, she would have paid it for the benefit of the subsequent mortgagee. The justice of the case, then, clearly required that the mortgage which she had purchased should be upheld in the

hands of Mary Hale as an existing security, maintaining its original priority to the subsequent mortgage. That such was the intention is plain from the nature and form of the transaction. She bought the mortgage and took an assignment of it, and a transfer of the note, and her interest was the same way. Upon the assignment of the note and mortgage to Mary Hale, the mortgage was not extinguished or merged in her equity of redemption, but remained a valid security on the land, and retained its place against the subsequent mortgage to Mr. Bell.

After Mary Hale took her quitclaim deed from James Woodward, and the assignment of the Goss mortgage, her title and estate in the land consisted of the right in equity to redeem the mortgage of Mr. Bell, and of the Goss mortgage, which she held as a subsisting security, in the same way that the original mortgagee held it ; and Mr. Bell's mortgage, being subsequent and subject to that, he could not maintain a writ of entry against her while the title remained in that state.

The Goss note and mortgage were part of her title and estate in the land, and not a mere personal right or privilege, which she could only assert herself while she continued to own the equity of redemption and the mortgage. It was not like a license, or a condition, or a mere right of entry, or the widow's right to an assignment of dower, which the law does not regard as estates or interests in land that may be conveyed. The mortgage and note constituted an interest and estate, saleable and assignable in its nature. Mary Hale owned the mortgage and the equity of redemption ; they constituted her title in the land, and that title she could sell and transfer to another, to hold as she held it. We have found no authority to the contrary. The general rule is, that whatever title and estate a man has in land he can convey. The case of *Freeman* v. *McGaw*, 15 Pick. 82, is strong to the point, that, in a case like this, where a mortgage is kept on foot for the benefit of a purchaser holding the equity, he may sell his interest, including the mortgage.

But James Woodward had parted with all his interest by his deed of August 29, 1849, and when he took his conveyance

from Mary Hale, on the 10th of September, 1849, he came as a purchaser, without any existing interest in the land, which required him to pay off the Goss mortgage for his protection, and which would, on that ground, give him the right to pay it and hold the mortgage over the land. Mary Hale might refuse to sell him the mortgage. Did she in fact sell and transfer it to him ? Was that the intention and effect of the transaction between these parties ?

It would seem to be quite clear that the mortgage does not now remain as a subsisting security in the hands of Mary Hale. She has conveyed all her interest in the land to Woodward, and therefore cannot hold this mortgage over it, and she passed over the note and mortgage to him. The mortgage was either extinguished while it remained in the hands of Mary Hale, by her sole and voluntary act, before the conveyance to the defendant, or it was extinguished at the time of the conveyance, and by the conveyance ; otherwise it was transferred by the conveyance to the defendant, and still remains as an existing security, and a part of his title in the land.

The money due on the Goss mortgage has not been paid by Joshua Woodward ; if it had been, the payment would have accrued to the benefit of Mr. Bell, and the mortgage would have been discharged. It has not been paid by Mr. Bell. Neither Joshua Woodward nor Mr. Bell has been party to any of the transactions in question ; and the plaintiffs have no right to insist on any particular construction of these writings and of this transaction, on the ground that they are injured by the upholding of this mortgage, because Mr. Bell took his security subject to the prior incumbrance of the Goss mortgage. That incumbrance has not been discharged by Joshua Woodward nor by Mr. Bell. If the defendant should succeed in maintaining his right to the Goss mortgage, the plaintiffs will still have all the security that was originally taken for their debt, and that was subsequent to and subject to the Goss mortgage, and the defendant will get no more than he or Mary Hale, under whom he claims, has bought and paid for.

Either, then, on the ground taken by the plaintiffs, Mary Hale and James Woodward, or one of them, have, understanding what they did, gratuitously, without consideration, and without any bargain or communication with Mr. Bell, given up their legal and equitable claim to this mortgage for his benefit ; or, this business has been so blended, that, contrary to their intention, they have forfeited and lost their right to this mortgage.

It would seem to be quite clear that neither Mary Hale nor James Woodward could have intended to pay the six hundred dollars, and interest due on the Goss mortgage, for Mr. Bell's benefit. Mary Hale paid the money due and took an assignment of the mortgage ; this made the mortgage her own, while she held it, and before the bargain with James Woodward ; she could not have designed to discharge and give up, for the benefit of another, that which she had thus purchased and procured to be assigned to herself. When she sold she could have had no such intention, and as little can it be presumed that James Woodward paid his money to Mary Hale, with the intention of extinguishing the Goss mortgage for the benefit of Mr. Bell.

In *Towle* v. *Hoit*, 14 N. H. 61, *Parker*, C. J., says, " There is nothing to show why he should pay up a mortgage, and have it discharged for the benefit of others. It was not his duty to do so, and we can not presume it to have been his intention." So in this case, it was not the duty of Mary Hale or James Woodward to buy and discharge this mortgage for the benefit of the subsequent mortgagee, and we cannot presume it to have been their intention.

Mary Hale, then, intended to sell all her interest in the land, including the Goss mortgage, which was part of her title ; and James Woodward intended to buy the same thing. Accordingly the deed purports to convey all her interest in the land, and the note and mortgage were delivered over to Woodward, and this delivery, accompanying the deed, transferred them to him.

But the note has written across the face, " Cancelled by Mary Hale." The case does not show when this was written, nor for what purpose, nor any of the circumstances. Does this entry

found on the note, in law discharge and extinguish the mortgage, so that it cannot be set up by the defendant against the subsequent mortgage, under which the plaintiffs claim?

It is not contended that the note has been paid by the party that owed it, and the mortgage discharged by performance of the condition. This writing on the note is not a release, which could discharge the mortgage without performance of the condition; a release which operates *proprio vigore*, must be made under seal, must be *inter partes*, and delivered. Nor is the note in fact and in law cancelled, in the sense in which a deed is cancelled when it is so mutilated and obliterated that the law will not allow it to be read in evidence. Neither Mr. Bell nor Joshua Woodward, the maker of the note, appear to have been parties to any contract of which this writing might have been a part. So far as the case shows any thing, either the writing was put on the note voluntarily, and without consideration, by Mary Hale, as her independent act while she held the note, and before the bargain with James Woodward, or it must have been put on the note at the time of the bargain, and as a part of it. In either case it is not easy to understand how Joshua Woodward could take advantage of it, if he were sued on the note. It is not a release nor an accord and satisfaction. The note has not been paid. If it is to be taken as evidence of an agreement between Mary Hale and James Woodward, that he would rely on the land for the amount of the mortgage, and not call personally on Joshua Woodward for payment of the note, such an agreement was legal and equitable, and not injurious to the subsequent mortgagee.

In *Robinson* v. *Leavitt*, 7 N. H. 95, it is said, "There is a class of cases where a covenant not to sue, or even a receipt acknowledging satisfaction, or the cancelling of the security, has not been held to operate as a discharge of the mortgage, but in these cases the transaction was by the agreement expressly intended as a confirmation of the title under the mortgage, and the justice of the case required that the mortgage title should be sustained, the land alone having by agreement been taken for the debt, and

.unless the mortgage was upheld no satisfaction had been received."

If it were understood that James Woodward was not to call on Joshua for the Goss note, and admitting that note to have been cancelled, the intention still appears plain to keep the mortgage on foot as part of the title conveyed to James Woodward. The deed conveyed all the title of Mary Hale, and the note and mortgage were delivered over to him ; for what purpose, unless the mortgage was understood to be still in force, and to make part of the title conveyed ? The justice of the case requires that the mortgage should be upheld ; unless it is upheld no satisfaction has been received for it by Mary Hale or James Woodward. This would seem to bring the case within the principle laid down as above in Robinson *v.* Leavitt.

Other authorities show that the cancelling of a mortgage will not prevent it from being set up as a security, when equity requires it. *Gale* v. *Adams,* 24 Vt. 70 ; *Robinson* v. *Lampson,* 23 Maine 338 ; *Holden* v. *Pike,* 24 Maine 427.

The equity and justice of this case would seem to be with the defendant. The plaintiffs' intestate took a mortgage subject to the prior mortgage, under which the defendant claims. The prior mortgage has not been paid by the mortgagor, nor by the subsequent mortgagee. But the amount of it has been paid by the defendant, or the party under whom he claims. No bargain or arrangement appears to have been made with Joshua Woodward, the mortgagor, or with the subsequent mortgagee, out of which any equity can arise in favor of the plaintiffs. If the prior mortgage to Goss is upheld for the benefit of the defendant, the plaintiffs still have all the security that was originally taken under their mortgage, and all that in equity and justice they are entitled to claim ; and the defendant has no more than he and Mary Hale, his grantor, have purchased and paid for ; whereas if the defendant is not allowed to set up this prior mortgage against the subsequent mortgage of the plaintiffs, he and Mary Hale, contrary to their interest, and contrary to what must be presumed to have been their intention, will have paid the amount

of the mortgage, not for their own benefit but for the benefit of the subsequent mortgagee.

The authorities all agree that the controlling principles on this subject are the justice of the individual case, and the interest and intention of the parties. These principles appear to be on the side of the defendant, and we do not find any unyielding rule of law to stand in the way of their application to this case.

We are, therefore, of opinion that the plaintiffs must pay the amount of the Goss mortgage to the defendants, before they can claim possession of the land against them, and on the case agreed there must be judgment for the defendants.

*Plaintiffs nonsuit.*