## Sample v. Rowe and Another.

A conveyed to the *Cincinnati, New Castle & Michigan Railroad Company*, in *May*, 1853, a tract of land in the town of *Muncie*, to be paid for in the capital stock of the company. In his written proposition to the company, which was accepted, he reserved the right to use and occupy the premises until the road should be completed to the town of *Wabash*, but, by mistake, the reservation was not inserted in the deed. In *August*, of the same year, he also conveyed to the company the *east* half of the north-east quarter of section 21, in township 20, north, of range 10, east. In *September*, the railroad company executed to A and B a deed of trust, conveying to them the two tracts of land conveyed by A to the company, together with a large amount of other lands, to be held by them in trust, to secure the payment of $75,000, for which the company had issued her bonds. By mistake, the eighty acre tract of land, conveyed by A to the company, was described in the deed of trust as the *west* half of the north-east quarter, &c. The bonds secured by the deed of trust had each of them a certificate attached, signed by the trustees, stating that the company had conveyed to them certain real estate to secure the payment of certain bonds, "of which the above obligation is one." The deed itself provided that the company should have the right to sell any part of the lands deeded, for not less than the appraised value mentioned in the deed, and that, upon the surrender to the trustees of an amount of the bonds equal to such appraised value, they should convey to the purchaser. The *Cincinnati, New Castle & Michigan Railroad Company* was afterward consolidated with other companies, and the new corporation took the name of the *Cincinnati & Chicago Railroad Company*. In *January*, 1857, A purchased of the consolidated company the eighty acre tract formerly conveyed by him to the old company, by surrendering $3000 of the bonds secured by the deed of trust, and crediting himself with $200 due for services as trustee, and, the mistake in the description being then

first discovered, took a deed from the company, in whom the legal title was supposed to be by reason of the mistake. In *September*, 1857, A filed his complaint against the consolidated company, alleging a mistake in the deed made by him for the lot in *Muncie*, in the omission of the condition that he should retain possession until the road was completed to *Wabash*, and a decree was entered reforming the deed in that particular. Subsequently, C and D, who held all of the outstanding bonds secured by the deed of trust, amounting to $15000, filed their bill for a foreclosure against the company, and A and B, the trustees named in the deed, and obtained a decree of foreclosure, and for the sale of all the lands described in the deed, "except such lands as had been purchased with bonds secured by the deed of trust." The mistake in the description of the eighty acre tract was carried into the decree and sheriff's advertisement, but, the error being discovered on the day of sale, the land was sold and conveyed by a correct description to C and D, as was also the lot in the town of *Muncie*. Suit by C and D against A, to recover the possession of the lands, and judgment of ouster against A. On the trial, A offered to prove that C and D had notice, at the time they purchased the bonds sued on, of his equity to have his deed for the town lot reformed.

*Held,* that the judgment was right as to the lot in *Muncie*, as C and D were not parties to the proceedings to reform the deed of A to the company, and, consequently, were not bound thereby.

*Held,* also, that as the bonds had been passed by the company, in good faith, and in the usual course of business, their value could not be affected in the hands of a subsequent holder, by notice to him of an outstanding equity in the trustee who had certified the title of the mortgaged lands.

*Held,* also, that in all cases of mistakes in written instruments, courts of equity will interfere as between the original parties, or those claiming under them in privity, such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, judgment creditors, or purchasers from them with notice of the facts.

*Held,* also, that where more than one obligation is secured by a mortgage, each is considered a separate mortgage, and the assignment of one or more of such obligations will carry with it so much of the mortgage, and such assignee, if the assignment is made in good faith, and without notice, is regarded as a purchaser, and protected from an outstanding equity.

*Held,* also, that the possession of A of the town property was not, under the circumstances, constructive notice to the original purchaser of the bonds from the company of A's equity. The purchaser had a right to rest upon the certificate made by A as trustee.

*Held,* also, that the sale of the eighty acre tract of land by the company to A, was in substantial compliance with the terms of the deed of trust, by which the company reserved the right to sell any of the lands, on the surrender of an amount of the bonds equal to the appraised value of the lands sold.

*Held*, also, that if the fact that A paid $200 of the appraised value in a claim for services as trustee, and not in bonds, rendered the sale to him voidable, it could only be avoided by a direct proceeding to set aside the sale, and the repayment to him of the purchase money and interest.

APPEAL from the *Delaware* Circuit Court.

GREGORY, J.—*Henry Rowe* and *John Bates* sued the *Cincinnati & Chicago Railroad Company* and *Thomas J. Sample*, in the court below, for the possession of real estate, and to correct an alleged mistake in the description of a portion thereof, in a deed of conveyance from the latter to the *Cincinnati, New Castle & Michigan Railroad Company.* On the 20th of *May*, 1853, *Sample* conveyed by deed in fee, to the latter company, one-third of an acre of ground in the town of *Muncie*, together with the office adjoining, described by metes and bounds; and, on the 11th of *August* following, in like manner, the former conveyed to the latter, among other real estate, the *east* half of the north-east quarter of section 21, in township 20, north, of range 10, east. On the 1st of *September*, of that year, the railroad company executed a deed of trust, in the nature of a mortgage, by which she conveyed to *Sample*, and one *Thomas Corwin*, some forty-one different tracts of land, with an estimated value on each, to be held by them as trustees, to secure the payment of a loan of $75,000, with the interest thereon, for which the railroad company issued her bonds in the sum of $1000 each, with interest warrants attached. Among the real estate conveyed by this deed of trust, is the town property conveyed by *Sample* to the railroad company, and the following: "Also, the *west* half of the north-east quarter of section 21, in town 20, north, of range 10, east, containing eighty acres, and deeded by *Thomas J. Sample* to the company, appraised at $3200." The *east*, and not the *west* half, was intended, but was, by mistake, described as the *west* half.

The following stipulation is contained in the deed of trust: "And it is hereby expressly agreed and understood,

that the said party of the first part reserves the right
to sell any portion of the property herein specified, at a price
not less than the sum herein named as the appraised value
thereof, and a proportionate price for any portion of any of
the said several pieces of property; and whenever the
said party of the first part, having made such sale, shall
purchase and surrender to the said parties of the second
part, or their successors in said trust, to be cancelled,
an amount of the bonds herein specified and designated to
be secured by this deed of trust, equal to the appraised
value of any portion of said property, as herein speci-
fied, or of a proportionate part of the appraised value
of any one of said several pieces of property, then the said
party of the second part, or their successors in said trust,
shall execute and deliver to such person or persons as the
said party of the first part shall designate, a deed in
fee simple for such portion of the said property."

The *Cincinnati, New Castle & Michigan Railroad Company*
was afterward consolidated with the *Cincinnati, Cambridge
& Chicago Short Line Railway Company* and the *Cincinnati,
Logansport and Chicago Railway Company*, and the com-
panies thus consolidating assumed the corporate name of
the *Cincinnati & Chicago Railroad Company*. This company,
afterward, having acquired the title to the eighty acres of
land above described, by virtue of the consolidation, sold
the same to *Sample* for $3200, which was paid by him
by the surrender of three bonds, of $1000 each, secured by
the deed of trust, and $200 to be credited to the company,
on the claim of *Sample* for his compensation for services *as
trustee*. When the deed was being executed to *Sample*, the
mistake in the description of the land was, for the first
time, discovered. Under the impression that the legal
title was still in the railroad company, and not in the
trustees, the former, at the instance and request of the
latter, on the 10th of *January*, 1857, conveyed to *Charles
P. Sample*, (a son of the appellant,) who quit-claimed to his
father, on the 22d of *April*, 1858. The deed of *January*

10, 1857, was duly recorded in *February*, 1857, and the other in *April*, 1858. The bonds secured by the deed of trust bear date the 1st of *September*, 1853. On the 19th of *May*, 1853, the appellant submitted his proposition, in writing, to the railroad company, for the sale of the property in *Muncie*, as follows: "I hereby propose to sell and convey to the *Cincinnati, New Castle & Michigan Railroad Company*, the following described real estate, to-wit: (here follows the description), for the sum of $1600, to be paid for in the capital stock of the company, at par. And, if the board of directors of said company shall accept this proposition within ten days from this date, the same shall be binding on me, and I agree to convey said property to said company by a general warranty deed, clear and free from all incumbrances, so soon as a certificate of the stock is executed to me; allowing me to retain possession of said property, if I do not remove to *Cambridge*, until the railroad is completed to *Wabash*, if I see proper, and no interest allowed on the stock until I vacate it. And when I give possession, the company pays me interest at the rate of two shares of stock per year. I am to have permission to take up and remove what plants and shrubbery I choose, whilst I occupy it." [Signed.]

THOMAS J. SAMPLE.

The railroad company accepted this proposition, but, by mistake, these conditions were not incorporated into the deed, which was executed the next day. On the 14th of *September*, 1857, the appellant filed in the *Delaware* Circuit Court, his complaint against the *Cincinnati & Chicago Railroad Company*, to reform the deed executed by him to the *Cincinnati, New Castle & Michigan Railroad Company*, in pursuance of the proposition. The railroad company entered an appearance, waived process, and admitted the allegations in the complaint; and the court decreed that the deed be corrected so as to contain the matter omitted.

There was attached to each of the bonds issued by the railroad company, secured by the deed of trust, the following certificate:

"We hereby certify that the *Cincinnati, New Castle & Michigan Railroad Company* have conveyed to us by deed, bearing date the 1st day of *September*, 1853, certain real estate in trust, for the use of the holders of their obligations of similar tenor as the above, issued and to be issued, to an amount not exceeding $75000, and which we have caused to be recorded in the several counties in the state of *Indiana* in which the said real estate is situate; and we further certify that the above is one of the obligations referred to in, and secured by, said deed.

[Signed.]                    T. J. SAMPLE, } *Trustees,*
                             THOS. CORWIN, }

The appellee *Henry Rowe*, on the 4th of *June*, 1857, filed his complaint in the *Delaware* Circuit Court, against the *Cincinnati & Chicago Railroad Company, Thomas J. Sample* and *Thomas Corwin*, alleging that he was the holder and owner of a certain amount of the bonds and interest warrants secured by the deed of trust, averring their non-payment, and praying a foreclosure of the deed of trust as a mortgage. On the 13th of *September*, 1858, *John Bates* was made a co-plaintiff, by the consent of *Rowe*, alleging that he was the holder and owner of certain other of the bonds and interest warrants secured by the deed of trust, averring their non-payment, and praying a foreclosure.

The railroad company answered the complaint; *Sample* did not answer. A trial was had, and the court found for the plaintiff *Rowe*, $3,850 50, and for the plaintiff *Bates*, $12,050. The court further found specially, "that the several bonds mentioned by the plaintiff *Henry Rowe*, in his complaint, and the several bonds mentioned by the plaintiff *John Bates*, in his complaint, were executed by the defendant, the *Cincinnati, New Castle & Michigan Rail-*

*road Company*, before the act of consolidation mentioned in the pleading, that the same were made and signed at *Muncie, Indiana*, where the office of the company was kept; that the same were taken to the city of *New York*, and offered for sale, but without success, and afterward were returned to, and sold at, the city of *Cincinnati*, in the state of *Ohio*, to *De Graff*, in payment for work done by him on defendant's road, in the state of *Indiana.*" A decree of foreclosure was had against the defendants, excepting "*such lands as had been purchased with bonds secured by the deed of trust.*"

The eighty acre tract was mis-described in the complaint, decree and sheriff's advertisement, but the sheriff, on the day of sale, discovered the mistake, and sold and conveyed to the appellees the right tract.

The town property deeded by *Sample* to the railroad company was sold under this decree to the appellees; and the second paragraph of the complaint is for the recovery of the possession thereof from the appellant.

There are no averments in the complaint in the foreclosure case, that could have formed the basis of a decree against *Sample* to set aside his purchase of the eighty acre tract of land of the railroad company. The appellees did not attempt to show what lands had been sold under the stipulation in the deed of trust, but contented themselves with protecting the rights of purchasers thereof, by excepting such sales from the operation of the decree of foreclosure, although they knew, when they filed their complaint, that *Sample* had made the purchase with the bonds secured by the mortgage. The decree of foreclosure was not rendered until some four years after *Sample* made his purchase, and the recording of the deeds under which he claims title. The record shows that the appellees became the purchasers at the sheriff's sale, under their decree, of the entire real estate embraced in the deed of trust, worth some *ninety thousand dollars*, over and above the eighty acre tract involved in the case in judgment.

There were no outstanding unpaid bonds secured by the deed of trust, other than those owned and held by the appellees. *Sample* offered to prove, on the trial, that *Rowe* and *Bates*, at the time they became the holders of the bonds in suit, had notice of his claim to the possession of the house and lot in *Muncie.*

The court below found for the appellees, and rendered judgment over a motion for a new trial. The evidence is in the record.

We think the finding of the court, as to the house and lot in *Muncie*, is right. The appellees were not parties to the suit to reform the deed from *Sample* to the railroad company, and cannot be bound by the decree rendered therein. Under the facts disclosed by the record, *Sample* had no right, as against *Rowe* and *Bates*, to correct the mistake in his deed, by the incorporation therein of the omitted condition, that he was to retain the possession of the property until the road was completed to *Wabash.*

The bonds held by the appellees had been passed by the railroad company, in good faith, in the usual course of business, to *De Graff*, for work done by him on the road in *Indiana*, and their value could not be impaired by notice to a subsequent purchaser thereof, of an out-standing equity, in the hands of the trustee who had certified the title of the mortgage lands, for the purpose of giving them currency. The rule seems to be, that in all cases of mistake in written instruments, courts of equity will interfere as between the original parties, or those claiming under them in privity, such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, judgment creditors, *or purchasers from them with notice of the facts. White et al.* v. *Wilson et al.*, 6 Blackf. 448, and the authorities there cited.

Where more than one obligation is secured by a mortgage, each is considered a separate mortgage, and the assignment of one or more of such obligations will carry with it so much of the mortgage. *Crouse* v. *Coleman*, 19 Ind. 30.;

*Murdock* v. *Ford,* 17 *id.* 52; *Harris* v. *Harlan,* 14 *id.* 439. And such an assignee is regarded as a *purchaser,* and, if in good faith, without notice, he is protected from an out-standing equity. The possession of *Sample* was not, under the circumstances of this case, constructive notice to *De Graff* of his equity: *De Graff* had a right to rest upon *Sample's* certificate.

We think the finding of the court below, as to the eighty acre tract, is wrong.

The power of sale reserved by the railroad company, is not the ordinary power of a *trustee* to deal with the property of the *cestui que trust.* The clause for the protection of the holders of the bonds secured by the deed of trust was, that an amount of such bonds equal to the appraised value of the property sold should be surrendered and cancelled; when this was done, all was done in which the *cestui que trust* had any interest whatever. The omission of this was the only thing of which they had a right to complain; a sale for a greater sum than the appraised value would have inured to the benefit of the railroad company, and not to the bond-holders. It was a reservation of a right, as well as of a power. The railroad company had the uncontrolled power to *sell* to whom she pleased; she could sell to the *trustee* as well as to a stranger. The trustee, having the legal title, was the proper person to make the conveyance, but, in the case in judgment, the legal title was still in the railroad company, by reason of the mistake in the description of the land in question, with the right of having the mistake corrected in a court of chancery. The mode adopted of making the conveyance was a substantial compliance with the terms of the power. The trustees, and those claiming under them, are estopped from claiming against the deed of the railroad company, and the bond-holders had no right to complain, because they got all that was stipulated in their favor, the surrender and cancellation of the three $1000 bonds, and the payment of $200 of the expenses of the trust. But

it is objected that the *two hundred dollars* was the private claim of the trustee, and that that made the sale to *Sample* void. We do not think so. Admitting, for the sake of argument, that this would render the sale voidable, yet the sale to *Sample* could only be set aside by reimbursing him his money paid, interest and improvements, if any were made by him after his purchase. That question could not be settled in this collateral manner, but in a direct proceeding to set aside the sale, in which all the equitable considerations would arise, growing out of the fact that the appellees have *ninety thousand dollars* of the mortgage property to pay some *sixteen thousand,* and their acts of acquiescence for an unreasonable length of time.

We think that there is no such reference to the deed of *Sample* to the railroad company, as to make the description of the land in question in that deed, a part of the description of the land in the deed from the railroad company to the trustees. The phrase, "deeded by *Thomas J. Sample* to the company," in the latter deed, is the statement of a fact, and not a reference to a deed for greater certainty, for it will be noticed, that in the description of each of the forty-one tracts of land contained in the deed of trust, it is stated by whom each was deeded, with the valuation thereof. We, however, do not consider this question of much importance in this case, as the sale of the land, and the surrender of the bonds, vested in *Sample* the equity in the land, which, under the code, would protect his possession.

As the land was misdescribed in the decree of foreclosure, that decree cannot affect the rights of *Sample;* but independent of this, we think the saving clause in the decree sufficient to embrace the sale to him of the eighty acre tract in controversy.

By statute, under the general denial, every defense, both legal and equitable, can be given in evidence, therefore, the only question properly before us is, did the court below err in overruling the motion for a new trial? There are a

number of questions argued by counsel that we do not decide, because they are not properly in the record.

The judgment of the court below, as to the east half of the north-east quarter of section 21, in township 20, north, of range 10, east, is reversed, and as to the residue of the real estate described in the complaint, is affirmed. The cause is remanded to said court for a new trial. Costs against the appellees.

*W. March* and *T. J. Sample,* for appellant.

*J. Smith* and *Shipley & Kilgore,* for appellees.