## Case No. 16,087.

### UNITED STATES v. PRESTON et al.

[4 Wash. C. C. 446.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1824.

WRIT OF ERROR—RECORD—DUTY BONDS—PAYMENT BY SURETIES—SUBROGATION.

1. Where irregularities appear in records coming from the district to the circuit court, this court will in future decide on the record

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

[2] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

alone, disregarding the parol admissions of the parties.

2. Under the sixty-fifth section of the duty act of March 2, 1799 [1 Stat. 676], the surety having discharged the bond for duties to the United States, is entitled to no other advantages secured to the United States, except the preference and priority reserved to the United States to be first paid out of the estate of the principal. He is not entitled to proceed against the person and effects of executors and assignees in the cases mentioned in this section; to require special bail; to demand judgment at the first term; to sue in the federal courts when the parties are citizens of the same state.

[Cited in U. S. v. Ryder, 110 U. S. 740, 4 Sup. Ct. 201.]

[Cited in Grove v. Little. 11 Leigh. 195; Jackson v. Davis, 4 Mackey, 199; Zook v. Clemmer, 44 Ind. 29.]

3. Where the surety has paid the bond, he cannot maintain assumpsit in the name of the United States, against the assignees of the principal. The only remedy is for money laid out, &c. on the bond in his own name, under the privilege granted to him by the sixty-fifth section.

[Cited in U S. v. Ryder. 110 U. S. 740, 4 Sup. Ct. 201.]

4. Where one obligor, though a surety, pays the bond, he cannot maintain an action on it in the name of the obligee against his co-obligors, nor an action for money laid out and advanced, except in his own name.

[Cited in Edgerly v. Emerson, 23 N. H. 560.]

Error to the district court of the United States for the district of Pennsylvania.

It appeared from the agreement of counsel, that a suit was brought in the court below by the United States against Joseph and Thomas Lea, and Perrit their surety, upon a duty bond, upon which a judgment was rendered, and the amount of it was paid by the surety, to whom the bond was surrendered for his reimbursement out of the estate of Joseph Lea, in the hands of the defendants, voluntary assignees of all his estate. [Case unreported.] The present action was assumpsit, brought in the name of the United States against the assignees [Preston and Bunker], but intended for the use of the surety; and upon a motion of the plaintiff's counsel to the court below to have the suit so marked, the court dismissed the suit. The counsel entered into a written agreement, in which certain questions are stated for the decision of the appellate court, which will appear in the opinion given by that court.

For the plaintiff it was contended, that under the terms "advantage, preference or priority," in the sixty-fifth section of the collection law of March 2, 1799 (1 Story's Laws, 631 [1 Stat. 676]), the surety is entitled to every advantage reserved to the United States by that section, and consequently may sue in the federal court, and may demand a trial on motion at the return term of the writ. (2) That the assignees can not make any equitable defence in this suit, which they could not set up against the United States. He cited the following cases: 2 Ves. Sr. 622; 1 Atk. 135; 1 Ch. Obl. R. 64; 1 Johns. Ch. 413; 17 Mass. 464; 2 Bin.

382; 2 Bos. & P. 268; 1 East, 220; 1 Caines, 122; Poth. pt. 2, c. 3, § 5; Id. c. 6, § 6; Id. pt. 3, c. 1, art. 6, § 2.

On the other side, it was insisted, that the debt to the United States having been paid by the surety, this suit, which is assumpsit, could not be maintained in the name of the United States, and further, that the only advantage intended by the sixty-fifth section of the collection law to be granted to the surety, is that of preference to be paid out of the effects of the principal in the hands of his assignees or executors. They cited 1 Serg. & R. 339; Whart. Dig. 315, § 65; Winchester v. Hackley, 2 Cranch [6 U. S.] 342; Clason v. Morris, 10 Johns. 524, 539, 546.

WASHINGTON, Circuit Justice. This case comes before the court upon a writ of error to the district court. It was an action of assumpsit brought in that court in the name of the United States against Jonas Preston and Nathan Bunker, voluntary assignees of the estate and effects of Joseph Lea, in which a declaration was filed containing three counts. The first is for money had and received by the defendants from the estate and effects of Lea, to the use of the United States. The second is upon insimul computassent. The third count is special. It states, that on the 10th of August, 1822, the said Lea was indebted to the United States in a certain sum for duties, for the payment whereof he had executed a bond to the United States; and on the same day, the said Lea, being insolvent, made a voluntary assignment of all his estate and effects to the defendants, who accepted the assignment, by means whereof they received enough of the estate and effects of the said Lea to pay his said duty bond to the United States; in consideration whereof, and of the preference, priority, and advantage of payment by act of congress in such case made and provided, the defendants undertook and promised the United States to pay them the said sum due by Lea, out of the estate and effects so assigned to them. The conclusion of the declaration is in the usual form.

The plea of the general issue being filed, the district attorney, at a subsequent term, moved, in behalf of the United States, that this suit should be marked, to the use of John W. Perrit, the surety in the duty bond, and that it be proceeded in accordingly for his use, with the preference, priority, and advantage of the United States. This motion was overruled, and judgment was entered for the defendants; whereupon it was agreed by the counsel, that a writ of error should be sued out from the circuit court, and that the questions to be determined by that court should be, first, whether Perrit, the surety, might sue and recover in the district court, in the name of the United States, with the preference, priority, and advantage, by law secured to them? And, secondly, whether the defendants were entitled to make any

equitable defence against the plaintiffs in this action, other than such as might be made against the United States?

Intending to confine my opinion to the questions which the counsel have agreed to submit to the court, or rather, to the first, I shall notice the loose and irregular manner in which this cause comes from the district court, with no other view but to condemn it. In the first place, it is to be remarked that, although the parties were at issue on the general plea, yet no trial appears to have been had, but judgment was entered (no doubt by the argument of counsel) for the defendants, upon a collateral motion, unconnected with the merits of the issue in the cause. In the next place, the payment of the bond by the surety to the United States, although all important to entitle him to recover, is no where stated in the record, and it is only from the information given to the court by the counsel, on both sides, that I know that to be the fact. It is obvious, in short, that the case is brought up, with a view to obtain the opinion of this court upon what must appear to me to be abstract questions; although they would seem to be connected with the real merits of the cause, not from the record, but from the arguments and the admissions of the counsel. These observations are intended to bring about more precision and strictness in the practice, for the purpose of preventing disappointments and injury to the parties; as I shall feel it to be my duty, in future, to decide causes coming here from the district court, upon the record, and upon that alone.

The first question propounded on this record, depends for its solution upon the true construction of the sixty-fifth section of the act of congress, commonly called the "Collection Law," passed the 2d of March, 1799. It enacts that, in all cases of insolvency, or where any estate in the hands of executors or administrators shall be insufficient to pay all the debts due from the deceased, the debts due to the United States, on duty bonds, shall be first satisfied; and that any executor, administrator, or assignee, or other person, who shall pay any debt due by the person or estate from whom, or for which, they are acting, previous to the debt due to the United States, from such person, or estate, being first duly satisfied and paid, shall become answerable in their own persons and estate for the debt so due to the United States, or so much thereof as shall remain due and unpaid; and actions at law are directed to be commenced against them for the recovery of the same. After providing that, in all suits by the United States for the recovery of duties, or pecuniary penalties, special bail shall be required; the act proceeds to provide that, in the cases before mentioned, if any surety in such duty bond, his executors, administrators, or assignees, shall pay to the United States the money due upon such bond, he and they "shall have and

enjoy the like advantage, priority, or preference, for the recovery and receipt of the said moneys, out of the estate and effects of such insolvent or deceased principal as are reserved and secured to the United States; and shall and may bring and maintain a suit or suits upon the said bond or bonds, in law or equity, in his, her, or their own name, or names, for the recovery of all moneys paid thereon." As the surety, after he has discharged the bond, is to enjoy the like advantage for the recovery and receipt of the money so paid, out of the estate and effects of the insolvent as is secured to the United States, it becomes material to inquire, what is the advantage secured to the United States? and I feel strongly inclined to the opinion, that the advantage spoken of is nothing more than the preference and priority reserved to the United States by the preceding part of the section. It was earnestly insisted upon by the counsel for the plaintiff, that, under this expression, the surety was entitled, in addition to the privilege of priority of payment, to call upon the collector forthwith to cause a prosecution to be commenced for the recovery of the money due to him; to proceed against the person and effects of executors and assignees, in cases where they have paid any debt of the insolvent, previous to that due to the surety being first satisfied; to require special bail in such action; to demand judgment on motion at the return term of the writ, unless the defendant shall make oath that an error has been committed in the liquidation of the duties demanded upon the bond, specifying the errors alleged to have been committed, and that the same have been notified in writing to the collector, prior to the commencement of the return term; to recover interest at the rate of six per cent. per annum, from the time the bond became due, until payment thereof; and finally, to bring his suit in the federal court.

I think there are many serious objections to this construction of the section. What, for instance, has the collector to do with the prosecution of a suit, the fruit of which is not to go into the public treasury, but into the pocket of a private individual? As a public officer, and on the score of duty, he is enjoined to cause suits to be instituted on certain bonds due to the United States, with the history of which he is well acquainted, having been the agent in taking them, and is therefore enabled to give the necessary instructions to the law officer of the government, in case objections to a recovery should be made by the obligors. But what knowledge can he have of the transactions between the surety and his principal? and why should he be required to conduct a suit, which can be so much better managed by the person alone interested in the event of it? Again, what part of this section is it which grants to the surety the advantage reserved to the United States of proceeding against

the person and effects of the executors or assignees, where they have paid any debt of the insolvent, previous to that due to the plaintiff being first satisfied? The recovery of the surety, spoken of in this section, is to be out of the estate and effects of such insolvent or deceased principal, and not out of the effects of his executors or assignees. It would seem as if congress intended to leave the surety to such remedy as a court of law or equity might afford him, as a privileged creditor, in case of an improper disposition of the estate of the insolvent, by those to whom the management of it was entrusted.

As to the right of the surety to require special bail, and to recover legal interest upon the money paid for the principal, no provision, in favour of the surety, was necessary, as he would, of course, be entitled to the former in an action upon the bond, and to the latter, either in the name of interest, or of damages. The provision respecting special bail, where the United States were plaintiffs, was necessary from the circumstance that pecuniary penalties are embraced in the same sentence which speaks of duty bonds, in suits for the recovery of which special bail could not regularly have been demanded; and the provision respecting interest was probably made for the purpose of fixing a uniform rate of interest to be paid on duty bonds throughout the United States.

The important advantages, after all, which are claimed for the plaintiff under this section, are (1) the right to demand judgment on motion, at the return term of the writ; and (2) to bring his suit in a federal court.

As to the first, it is apparent that great injustice might be done to the defendant by extending this extraordinary privilege to the surety. As between the United States and the principal, it can seldom happen that the latter can have any other defence than to prove a mistake in the liquidation of the duties, and to prove payment of the bond. The legislature would seem to have contemplated no other than the first, by providing for a continuance only when the defendant shall make oath that such an error has been committed, of which he had notified the collector prior to the commencement of the return term. But the defences of the defendants to the suit of the surety may be various, requiring time to put in proper pleas, and to prepare for the trial. He may have paid the debt to the United States; the plaintiff may have reimbursed himself out of property pledged to him for his indemnification; he may have offsets to oppose to the claim; the value of the property assigned to the defendants, or of the assets in the hands of the executors, may fall short of the sum demanded, &c. It is correctly admitted by the counsel for the surety, that these defences may be made by the defendant; and if this be so, how can they be effectually made, if the plaintiff may ask for judgment at the return term of the writ? But what satisfies my mind entirely that this advantage was not intended to be granted to the surety is, the indulgence allowed to the defendant to put off the trial, upon his taking the prescribed oath, in order that he may have an opportunity of diminishing the amount of the bond by showing an overcharge of the duties for which the bond was taken. But could such a defence be made by the principal, or his representatives, against the surety, who, ignorant of a mistake, which it was the duty of the principal to get corrected, had paid the full amount of the bond? I very much doubt if it could be admitted.

(2) As to the jurisdiction of the federal courts in suits by the surety, the question is not whether it ought to have been granted, as to which I entertain no doubt, but whether it is in fact granted by this section? The expressions, as to the United States, are, that the collector shall cause a prosecution to be commenced "in the proper court, having cognizance thereof." This might be either a federal or a state court. But the jurisdiction of the federal court was not reserved to the United States by this section, but by the judiciary law of 1789. Had the expressions before quoted been repeated in relation to the suit of the surety, would it have conferred jurisdiction upon the district or circuit court? I think it would not. They are not intended, or used, for the purpose of conferring jurisdiction upon any court, but merely to direct that the suit shall be brought in the proper court which then had cognizance thereof. But the district court had not then cognizance of this suit, it being between citizens of the same state. In every instance where congress has conferred jurisdiction upon a federal court, in cases arising under a law of the United States, it has been by terms clearly pointing out the particular court which was to exercise it. I refer particularly to the patent act, the copyright act, and the act incorporating the Bank of the United States.

My opinion, therefore, as to the construction of this section is, that the term "advantage" is used as synonymous with "preference and priority," which, in reference to the subject of insolvency in the principal, are clearly synonymous. A preference of payment is nothing more or less than a right to be first paid, and a right of priority is a preference of payment before the other creditors of the insolvent; and such a preference or priority is an advantage enjoyed by the United States, and is by this section conferred on the surety. Had the legislature intended to bestow upon the surety all the advantages secured and reserved to the United States, it is not likely that such an intention would have been expressed by the terms "the like advantage, preference or priority." But if I should be wrong in this interpretation of the section, I feel no hesitation in deciding that the present action cannot be maintained

tained, either in a federal or state court. It is exposed to at least one fatal objection, which is, that it is an action by the United States to recover against the assignees of the principal in a bond, a debt which, it is admitted, had been paid by another obligor in the same bond. This would have been no objection to the suit of that other obligor upon the bond, because the sixty-fifth section of the above act authorizes him to maintain such a suit for the recovery and receipt of the money so paid to the United States, out of the estate and effects of the principal. Nor is the question altered by the motion which was made in the district court "to mark the suit to the use of the surety in the duty bond," because I hold it to be perfectly clear, that where one obligor, though a surety, pays the bond, he cannot maintain an action upon the same bond in the name of the obligee against his co-obligor; nor can he maintain an action for money laid out and advanced for his principal, to recover the money so paid, except in his own name; for to him alone the debt is due. To be sure, the assignee of a chose in action, not assignable at law, must bring his suit in the name of the assignor, because the debt, though in equity due to the assignee, is, in the view of the law, due to the assignor, and the assignee, until the courts of law assumed an equitable jurisdiction over the case, for the purpose of protecting his interest, was obliged to resort to a court of equity. But in the case now under consideration, the legal remedy, either on the bond or for money paid, laid out and expended for the insolvent, is in the surety, and the United States, the nominal plaintiffs, have no right, either legal or equitable, to maintain this suit.

The second question stated for the opinion of the court, is not very intelligible to my mind, as I do not well understand what is meant by an equitable defence to a legal action, which this unquestionably is. If the particular defence which was intended to be set up had been stated, the solution of the question might have been attended with less difficulty. In its present shape it has too much the appearance of an abstract question to justify the court in attempting to answer it. At all events, an answer to it is rendered unnecessary by the decision upon the first point.

The judgment of the district court must be affirmed with costs.