## Case No. 15,426.

### UNITED STATES v. HUNTER.
### CRARY v. HUNTER.

[5 Mason, 62.] [1]

Circuit Court, D. Rhode Island. June Term, 1828. [2]

INSOLVENCY—CLAIMS AGAINST SPAIN—PRIORITIES —SUBROGATION—SURETY ON CUSTOM-HOUSE BOND—DEBTS DUE UNITED STATES.

1. A claim of a person to compensation for wrongs done under Spanish authority, and provided for by the treaty of 22d of February, 1819 [8 Stat. 252], with Spain, passed to his general assignee upon his insolvency.

[Cited in Jones v. Dexter, 125 Mass. 471; Leonard v. Nye, 125 Mass. 467. Distinguished in Sibbald's Estate, 18 Pa. St. 254.]

2. A surety on a custom-house bond, who has paid it, has the same priority, as the United States, against the estate of his principal in the hands of his assignee.

[Cited in Jackson v. Davis, 4 Mackey. 199; Kane v. State, 78 Ind. 110. Cited in brief in Richeson v. Crawford, 94 Ill. 166. Cited in Zook v. Clemmer, 44 Ind. 29.]

3. If such surety become insolvent, and the same person is assignee of both estates, the funds of the principal to the extent of the debt due such surety, as a priority creditor, are, by operation of law, deemed assets of the surety; and if the latter is also indebted to the United States for other debts, the United States may, by a bill in equity against the assignee, ensure its priority out of such fund or assets.

4. If under the act of 24th May, 1824, c. 140, § 2 [4 Stat. 33], the secretary of the treasury omit to retain the amount of debts due to the United States from a person entitled, by an award under the Spanish treaty, to money provided for payment of such award, it does not prejudice the right of the United States to proceed for payment of such debts against the general assignee, who has received the money from the treasury.

These were bills in equity, which were set down for a hearing upon the bills, answers, and exhibits. The defendant [William] Hunter, as assignee under the insolvent act of Rhode Island, of Archibald and Frederick Crary, had recovered, under the 11th article of the treaty with Spain in 1819, by the award of the commissioners, for a claim of Archibald and Frederick Crary, the sum of $8158 and 81 cents, which sum had since been received by him from the treasury of the United States. The object of the bill brought by the United States was to obtain payment of certain debts due to them from one Jacob Smith, upon which they had recovered judgments, and for which this fund was alleged to be liable. The object of the cross bill of Frederick Crary was, to have the same money paid to him, as surviving partner of A. & F. Crary, upon the ground, that the claim, for which the money was awarded, never passed by their assignment, and that the money awarded belonged therefore to him. Both causes came on to be heard together; and the material facts and circumstances were as follows: A. & F. Crary were merchants in Rhode Island, and

became insolvent in 1809, and in June of the same year, were discharged under the insolvent act of that state; and upon that occasion they made an assignment of all their estate and effects to the defendant, Hunter, and one John Meer, since deceased, who were appointed assignees. In February, 1808, a judgment was recovered against Jacob Smith by the United States upon a custom-house bond, executed by him as surety of the Crarys, for the sum of $2064.06, and interest and costs, which was paid by Smith. In August, of the same year, another judgment was recovered against him and one Dockray, for $347.50, and interest and costs, upon another custom-house bond, executed by them as sureties of the Crarys, one half of which judgment was paid by Smith and one half by Dockray. Soon afterwards Smith became insolvent, and in February, 1810, he obtained the benefit of the insolvent act of Rhode Island, and subsequently made a like assignment of all his estate and effects to the defendant, Hunter, and one William Littlefield, since deceased, who were appointed his assignees. This assignment bears date on the 3d of September, 1811. The inventory annexed to it contains, as part of the property assigned, "one custom bond paid of Archibald Crary and son (that is, A. & F. Crary), for $2,125. Smith and one William M'Gee were also sureties for one William Peck, the marshal of Rhode Island, and supervisor of the internal taxes &c. in that state, on his official bond to the United States, on which the United States obtained judgment in August, 1811, for the sum of $13580.59 against Peck and Smith. An execution issued on that judgment on the 16th of September, 1811, returnable to the next term of the district court of the United States for Rhode Island district, on which Smith was committed to gaol on the 17th of September, 1811. On the same day Smith (he having previously applied to the then secretary of the treasury for that purpose, by a petition stating the facts) was, by order of the secretary of treasury, in virtue of the authority of the act of 6th of June, 1798, c. 66 [1 Stat. 577], discharged from imprisonment; and on that occasion he executed to the United States an assignment of all his estate and effects, and annexed thereto a copy of the same schedule of his estate, which was delivered with his assignment under the insolvent act, the latter assignment being then fully known to the officers of the government. That schedule referred to the debt of the Crarys, as above stated. Afterwards the United States imprisoned William Peck (the principal) on the same judgment; from which imprisonment he was discharged by an act of congress, passed on the 24th of June, 1812, c. 104 [6 Stat. 109], and he then executed an assignment of all his estate and effects, in conformity with the requirements of that act. The bill of the United States, after charging the material facts, prayed satis-

---

[1] [Reported by William P. Mason, Esq.]
[2] [Affirmed in 5 Pet. (30 U. S.) 173.]

faction of their debt and judgment against Smith, out of the proceeds now in the hands of Hunter, upon the ground of the priority of the United States to payment out of the assets of Smith in his hands, and his (Smith's) priority of payment out of the funds of the Crarys received by Hunter, which attached thereto by operation of law.

Dist. Atty. Greene. for the United States.
Hunter, in pro. per.

STORY, Circuit Justice. Some of the questions intended to be discussed in this case have been already settled by the recent decisions of the supreme court. In the first place the point, upon which the cross bill is founded, is, whether this claim of the Crarys was assignable, and if assignable in its own nature, whether it passed under the assignment, by force of the insolvent act, to the assignees. Upon that I need say no more, than that Comegys v. Vasse, 1 Pet. [26 U. S.] 143, has completely settled the doctrine in the affirmative. I have not the least difficulty, therefore, in saying, that the cross bill of Frederick Crary must be dismissed.

Then as to another point, viz. that the discharge of Peck from imprisonment. by the secretary of the treasury, under the act of congress of the 24th of June, 1812. c. 104, was a discharge of his sureties from the judgment obtained against them. The act of congress, after authorizing the discharge of Peck from imprisonment upon his executing an assignment of his estate under the direction of the secretary of the treasury, provides, "that any estate. real or personal. which the said William Peck may hereafter acquire, shall be liable to be taken in the same manner, as if he had not been imprisoned and discharged." The sole object of the act was a discharge of the party from imprisonment, and not a discharge of the judgment itself, upon which he was committed in execution. The debt was to remain in full force as to all intents and purposes, except imprisonment of the party. The case, therefore, falls within the authority of U. S. v. Stanbury, 1 Pet. [26 U. S.] 573; and the judgment was not discharged in favour of Peck, and consequently not discharged in favour of his sureties.

Then upon the general merits, what are the objections to a recovery on the part of the United States? The money received by Hunter, as assignee of the Crarys under the award, was received for, and was distributable among, their creditors according to the priority, as established by law. Smith had paid a custom-house bond, as surety for the Crarys, to the amount of $2,125, in May, 1808, and to this amount he was entitled to the same priority. which the United States would have possessed, if the bond had remained unpaid. That is the express provision of the 65th section of the revenue collection act of 1799, c. 128 [1 Story's Laws. 630; 1 Stat. 676. c. 22]. Hunter being also the assignee of Smith, must, by operation of law, be deemed to hold so much of the fund, as this priority of Smith attached to, as part of Smith's estate. In this view, the priority of the United States upon their judgment and debt against Smith re-attached to the same fund, as part of Smith's estate in the hands of his assignee, which was distributable among his creditors, independently of the special assignment made by Smith, when he was discharged from his imprisonment. There is no pretence to say, that this discharge operated any satisfaction of that judgment.

Then it is suggested, that by the act of 24th of May, 1824, c. 140, § 2, creating five millions of stock, and appropriating the proceeds of it to the payment of the claimants, to whom money was awarded under the treaty with Spain, the United States reserved and secured to themselves the right or power to withhold the allotted compensation from their debtors, unless the amount due to the United States was first deducted or paid; and that full payment was made to Hunter, the assignee, without claiming or making any such deduction. This certainly does not vary the legal rights of the United States, for the fund received is still to be distributed according to law among the creditors; and here the United States are creditors, and have a right of priority of payment. The mere omission to withhold payment was no legal waiver of right of priority; still less an extinguishment of the debt. The clause alluded to is as follows: "Provided also, that in all cases, where the person or persons, in whose name, or for whose benefit and interest. the aforesaid awards shall be made, shall be in debt and in arrears to the United States, the secretary of the treasury shall retain the same out of the amount of the aforesaid awards in the first instance, and a warrant or certificate. as the case may be, shall issue only for the balance." The omission of the secretary to do his proper duty under this act. if there was any, which, as Smith, and not the Crarys, was the debtor, may be doubted, proceeded from mere mistake, and from want of a due knowledge of all the facts, and cannot prejudice the general rights of the United States, derived from other laws, or extinguish the debt due to them. The fund so received by the assignee, Hunter, must still be distributed according to law among the creditors. And we have already seen, that through Smith's priority on the estate of the Crarys the priority of the United States attaches to that part of the fund belonging to Smith in Hunter's hands, and must be distributed accordingly. The United States are therefore entitled to a decree for an account; and a reference must be made to a master to ascertain and report accordingly.

[For a ruling upon a decision of the master. see Case No. 15,427. The decree in this case was affirmed upon appeal by the supreme court. 5 Pet. (30 U. S.) 173.]