## Zook *v.* Clemmer.

44  15
147  406

REPLEVIN BAIL.—*Series of Notes Secured by Mortgage—Right of Subrogation.*—Where the payment of several promissory notes is secured by a mortgage, and a personal judgment has been obtained by the payee or by his indorsee on the note first falling due, without any foreclosure of the mortgage, and the judgment has been replevied, and paid off by the replevin bail, such replevin bail cannot, on account of such payment, claim under the mortgage and have the mortgage foreclosed and the premises sold for the repayment to him of the money so paid, as against one who holds title to the premises under a foreclosure and sale for the payment of another of the notes, secured by the same mortgage, which fell due after the one on which the judgment was rendered that was replevied and paid by the replevin bail. BUSKIRK, J., dissented.

From the Johnson Common Pleas.

*W. R. Harrison* and *W. S. Shirley*, for appellant.
*G. M. Overstreet* and *A. B. Hunter*, for appellee.

DOWNEY, C. J.—This was an action by the appellee against the appellant. It is stated, substantially, in the complaint, that on the 11th day of July, 1860, at, etc., James H. Terhune, now deceased, owned certain real estate described in the complaint, which had on that day been conveyed to him by

John S. Kiphart, and that he then executed to said Kiphart, a mortgage thereon, his wife, now also deceased, joining therein, to secure, among other notes for purchase-money, executed by Terhune to Kiphart, one note for one hundred and thirty-five dollars, payable December 25th, 1860, and which was for the first payment of said purchase-money; that on the same day, Kiphart indorsed said note to one William B. Norman, who afterward, at the February term of the Johnson Common Pleas, in 1861, without foreclosing the mortgage, obtained a judgment against Terhune on the note for the amount thereof, without relief, etc.; that on the 25th of February, 1861, at the request of Terhune, the plaintiff became replevin bail for the stay of execution on the said judgment. It is further stated that on the 1st day of September, 1861, without any order from this plaintiff and without his knowledge or consent, an execution was issued on said judgment, and it was by the sheriff levied on said mortgaged premises, as the property of Terhune, and that on the 14th day of December, 1861, the sheriff sold said real estate, which was then of the value of three thousand dollars, to one Deitch for twenty-five dollars, and on the 17th day of February, 1862, executed to him a deed therefor, and that Deitch afterward conveyed the same to one Fesler. It is then stated that afterward, in 1862, said Deitch, who was the indorsee and owner of the second note secured by said mortgage, caused the said mortgage to be foreclosed, making Terhune and wife parties defendants, in the Johnson Common Pleas, and that on a sale thereof said Fesler became the purchaser and received a conveyance therefor from the sheriff, and that Fesler afterward conveyed the said real estate to the defendant, Zook, who is in possession thereof. The mortgage was duly recorded on the 11th day of July, 1860. Terhune had no other property than said mortgaged premises. The plaintiff further states that on the 1st day of September, 1861, he did, as such replevin bail, pay off and discharge said judgment, amounting to one hundred and forty-five dollars, which amount is

due and remains unpaid.   Wherefore the plaintiff demands that he be subrogated to all the rights of said William B. Norman at the time of the taking of said judgment in and to said debt, and to his lien upon said mortgaged premises, that the mortgage be foreclosed for his benefit, and that the mortgaged premises, or so much thereof as may be necessary, be ordered to be sold, etc., and for other proper relief, etc.

A demurrer to the complaint for the reason, among others, that it did not state facts sufficient to constitute a cause of action, was filed by the defendant and overruled by the court. The defendant excepted.   Upon issues formed, there was a trial by the court, finding for the plaintiff, motion by the defendant for a new trial overruled, and judgment on the finding.

The first error assigned is the overruling of the demurrer to the complaint.   Where the payment of several promissory notes is secured by a mortgage, and a personal judgment is obtained by the payee or his indorsee on the note first falling due, without any foreclosure of the mortgage, and that judgment has been replevied and paid off by the replevin bail, can such replevin bail, on account of such payment, claim under the mortgage, and have the mortgage foreclosed, and the mortgaged premises sold for the repayment to him of the money so paid, as against one who holds title to the premises under a foreclosure and sale for the payment of another of the notes secured by the same mortgage, which fell due after the one on which the judgment was rendered that was replevied and paid by such bail?

It is not claimed by counsel for the appellee that their client can have execution on the replevied judgment, under sec. 676, 2 G. & H. 309, and sell the mortgaged premises, but it is insisted that he can be subrogated to the rights of the mortgagee under the mortgage, according to the common law, even as against the residue of the mortgage debt, or the title of those who claim by a sale for the satisfaction of that residue.   They claim that a replevin bail is a surety, and

Vol. XLIV.—2

that as such, when he has paid off the debt, or the part of the debt for which he was security, he can be subrogated to all the rights of the creditor. The appellee could not, it would seem, have execution on the judgment replevied, and have the mortgaged premises sold, in order to reimburse himself. The mortgaged premises had already been sold on an execution on the judgment replevied, and if this sale was void as being in violation of sec. 640, 2 G. & H. 297, which forbids the sale of the equity of redemption on the execution issued on such personal judgment, still this section would prevent a sale of the equity of redemption on an execution issued on the judgment at the instance of the replevin bail.

We do not doubt the correctness of the general proposition contended for by counsel for the appellee, that when a surety has paid the debt of his principal, he has a right to claim the benefit of any securities for the debt which were in the hands of the creditor. But that is not quite the rule which counsel seek to have applied in this case. They claim that when a surety has paid only a part of the debt, he can have the money thus paid by him refunded out of the securities in the hands of the creditor, whether the creditor has received the residue of his debt or not. The several notes secured by the mortgage in this case must, we think, be regarded as but one debt with reference to the rule in question. If not, the entry of replevin bail on the personal judgment against Terhune, in favor of the indorsee of the mortgage, would add nothing whatever to the security already existing for the payment of the mortgage debt; for if the position of the appellee can be sustained, so soon as the replevin bail had paid the judgment, he could at once claim under the mortgage, to the exclusion of those holding the notes subsequently falling due, or those claiming title under a sale to satisfy such subsequent notes. Let it be supposed that Kiphart, the mortgagee, had continued the owner and holder of the three notes secured by the mortgage; that he had obtained a personal judgment on the note first maturing;

that Clemmer, the appellee, had become replevin bail on that judgment; that he had paid the judgment; that Kiphart had foreclosed the mortgage, to make the amount of the other two notes, had sold the mortgaged premises on the judgment of foreclosure, and had himself become the purchaser; can it be successfully contended that in such case Clemmer could again foreclose the mortgage, sell the premises, and take them away from Kiphart? This is, in substance, the case made by the complaint. In support of the position that the surety is not entitled to be subrogated to the creditor's rights in the security held by him until the whole debt has been paid, we refer to *Kyner* v. *Kyner*, 6 Watts, 221; *Armstrong's Appeal*, 5 Watts & Serg. 352; *Union Bank, etc.*, v. *Edwards*, 1 Gill & J. 346; *Belcher* v. *The Hartford Bank*, 15 Conn. 381; *The Stamford Bank* v. *Benedict*, 15 Conn. 437; Dixon Subrogation, 122, 123. The fact that the judgment was replevied may have prevented the judgment plaintiff from making the money out of the estate of the judgment defendant not covered by the mortgage, which he had a right to do by an execution on the personal judgment. In our opinion the complaint does not state facts sufficient to constitute a cause of action. The demurrer to it should, therefore, have been sustained, instead of being overruled. The other questions arising at a subsequent stage of the case need not be considered.

The judgment is reversed, with costs, and the case remanded, with instructions to sustain the demurrer to the complaint.

BUSKIRK, J.—I am constrained to dissent from the opinion and judgment pronounced in this case by a majority of the court, and proceed to state the reasons for such dissent.

The primary and principal question presented by the record and decided by the majority of the court is, whether a person who has become replevin bail upon a judgment, rendered on the first of three notes secured by a mortgage upon real estate, and who has been compelled to pay such

judgment, can be subrogated to the rights of the mortgagee or his assignee, the mortgagor having no property other than that mortgaged, and can obtain a foreclosure of the first mortgage and a priority over persons who derive their title by a sale under a foreclosure of the second mortgage, the owner of the first mortgage not having been a party to the suit to foreclose the equity of redemption of the second mortgage.

The material facts are these: Kiphart sold to Terhune a tract of land and took his three several notes for the purchase-money, such notes being payable in one, two, and four years, and a mortgage upon such real estate to secure the payment of such notes. Kiphart assigned the note first due to William B. Norman, and the second note to Joseph and Felix Deitch. Norman obtained a judgment in the Johnson Common Pleas upon such note against Terhune, without a foreclosure of the mortgage given to secure it. Clemmer, the appellee, became the replevin bail on such judgment and was compelled to pay the principal and interest of the judgment. An execution having been issued upon such judgment, and having been levied upon the mortgaged property, and the same having been sold without the knowledge or procurement of Norman, the sale was absolutely void, and the case stands as though no execution had been issued or sale made.

Joseph and Felix Deitch obtained a judgment upon the second note, and a foreclosure of the mortgage against Terhune and wife, Norman not being a party to or bound by such proceedings. The mortgaged property was sold upon and under such decree of foreclosure, and was purchased by William Fesler, who had become the owner of such decree by assignment. Fesler, having paid off the third note, sold and conveyed the property to the appellant.

Solomon Clemmer, having paid the judgment upon which he became replevin bail, brought this action to obtain a foreclosure of the first mortgage, and priority over the appellant who derives his title by and through the decree of foreclosure of the second mortgage and the sale thereunder.

The first inquiry, therefore, relates to the effect of the mortgage given to secure the three notes, and the effect of the assignment of the first and second notes to different persons.

The questions thus stated came for the first time before this court in the case of *The State Bank* v. *Tweedy*, 8 Blackf. 447. BLACKFORD, J., after reviewing the decisions in the other states and finding them to be in irreconcilable conflict, says :

"This state of the authorities leaves the question, How is the mortgage-fund to be applied in payment of notes secured falling due at different times? an entirely open one for our consideration, and for decision upon general principles. That application, it seems to us, should depend upon the nature of the mortgage-contract. What, then, is the proper meaning or construction to be given to a mortgage in the common form, executed to secure a debt evidenced by several promissory notes payable at different times ? That meaning or construction must depend much upon the law of the remedy or remedies upon such notes and mortgage, for these contracts as well as others are made under, and with an eye to the laws governing their enforcement. In this State, if no statute interpose, a mortgage securing a debt payable by instalments may be foreclosed on default of payment of the first instalment, and the mortgaged property sold for the payment of that instalment.      *      *      *

"The law, then, may be stated, in general terms, to be, in this State, that the holder of the first of several notes secured by a mortgage may, if he choose, when that note becomes due, enforce the full payment of it out of the mortgaged premises, they being sufficient for that purpose; and that the holder of the second note may, in like manner, obtain priority over the third, and so on.

"Such being the law, the legal effect of a mortgage-contract, such as is now under consideration, where several notes accompany the mortgage and it is controlled by no express stipulation of the parties, must correspond to the law; and this, whether the notes are in the hands of the payee or an assignee,

and whether they are all or but a part of them due at the time of suit upon any one of them; for suppose the second note first assigned, that does not render it first collectible, and cannot prevent a subsequent assignee of the first note, on its coming due, proceeding to collect it out of the mortgaged fund.

" It cannot be stated then, as a general proposition, that in this State, the assignment of any one of the notes secured by mortgage, carries with it, either *pro rata* or *pro tanto*, a corresponding portion of the mortgage-security; but, as appears from what has been said, the effect of such assignment is to carry a *pro tanto* interest in that security subject to the paramount claim of notes previously due. The different instalments in a mortgage, when secured by corresponding notes, may be regarded as so many successive mortgages, each having priority according to its time of becoming payable."

The ruling in the above case has been adhered to in the following cases: *Stanley* v. *Beatty*, 4 Ind. 134; *Hough* v. *Osborne*, 7 Ind. 140; *Harris* v. *Harlan*, 14 Ind. 439; *Murdock* v. *Ford*, 17 Ind. 52; *Mattix* v. *Weand*, 19 Ind. 151; *Crouse* v. *Holman*, 19 Ind. 30; *Sample* v. *Rowe*, 24 Ind. 208; *Somers* v. *Pumphrey*, 24 Ind. 231.

This should be regarded as the settled law in this State. When Kiphart assigned the note first due to Norman, he also transferred to him the mortgage given to secure such notes. Norman was, therefore, the owner and holder of the first mortgage, and entitled to priority over the holders of the second and third notes. It was held by this court in *Sample* v. *Rowe, supra*, that such an assignee is regarded as a purchaser, and if in good faith, without notice, he is protected from an outstanding equity. Norman, being the owner of the note and the mortgage, had the right to sue upon the note and exhaust the other property of the payor, and then proceed for the balance due by a foreclosure of the mortgage and the sale of the mortgaged premises. He was entitled to both remedies, but could not pursue them

·both at the same time. *Hough* v. *Osborne, supra; Crouse* v. *Holman, supra;* sec. 636, 2 G. & H. 295.

There seems to be no room to doubt that if Norman had failed to make his debt by his judgment against Terhune, he could have foreclosed his mortgage and obtained priority over the holder of the second and third notes, and this, whether the notes were owned by the payee or his assignee.

It remains to inquire whether the replevin bail, having paid the judgment for his principal, is subrogated to the rights of Norman. The solution of this question depends upon whether a replevin bail is regarded as a surety, and whether if a surety is compelled to pay the debt of his principal, he is subrogated to all the rights and securities of the creditor.

Is a replevin bail regarded as a surety and entitled to the rights of a surety? It has been held by this court in several well considered cases, that the act of becoming replevin bail does not create or constitute a new and substantive contract between such surety and the judgment creditor, but by that act the surety becomes bound by the terms of the original contract; that by operation of law he becomes surety on the original contract; and though he becomes bail long after the date of the original contract, yet his liability relates back to the date of the original contract; and that replevin bail is treated as a surety and is entitled to all the rights and equities of a surety. *Hutchins* v. *Hanna,* 8 Ind. 533; *Nunemacher* v. *Ingle,* 20 Ind. 135; *Colgrove* v. *Cox,* 22 Ind. 43.

Replevin bail is declared by statute to be a surety, and it is provided that if such bail shall pay the judgment, it shall not be discharged by such payment, but shall remain in force for the use of such bail who may have execution thereon. Sections 676, 677, 2 G. & H. 309. It has, however, been held by this court that the remedy given by statute is only cumulative and does not take away the remedy existing at common law. *Harker* v. *Glidewell,* 23 Ind. 219; *Graham* v. *The C. & I. R. W. Co.,* 27 Ind. 260.

Clemmer, the replevin bail, should, by force of the above

decisions, be held a surety and entitled to all the rights and remedies of a surety at common law.

The case then stands thus: Norman by the assignment of the note became the owner of the mortgage which had been given by Terhune to Kiphart to secure the note so assigned. Norman had the right to sue upon the note, and make his debt out of the property of Terhune other than that mortgaged. To this remedy he resorted and obtained a judgment. Upon this judgment Clemmer became replevin bail and was compelled to pay the judgment. Norman held two securities, the liability of the replevin bail and his mortgage. The replevin bail could not compel him to resort in the first instance to his mortgage, but having paid the debt of the principal debtor without a satisfaction of the mortgage, he is entitled in equity to the security which Norman held against the principal debtor. This was decided by this court in *Jones* v. *Tincher*, 15 Ind. 308. In that case Jones was the surety of Howard on a note payable to Tincher. Tincher also held a mortgage on certain real property belonging to Howard. Tincher brought suit on the note against Howard and Jones. Howard made default. Jones answered that he was the surety of Howard, who was insolvent, and that Tincher held a mortgage on certain real estate of Howard to secure the note sued on. The prayer was, that Tincher should be compelled to resort in the first instance to his mortgage. The court held that the plaintiff was not compelled in the first instance to resort to his mortgage, but that if the surety should be compelled to pay the debt, he would be subrogated to the plaintiff's rights under the mortgage; and in support of this position reference was made to Burge Suretyship, 324, and *Dennis' Ex'rs* v. *Rider*, 2 McLean, 451.

The case of *Colgrove* v. *Cox*, 22 Ind. 43, is very much in point, and in my judgment should have been decisive of this case in favor of the appellee. In that case Gano and others obtained a judgment and foreclosure of a mortgage for nine hundred and six dollars and three cents, against

Elihu Cox. Robert Cox became replevin bail. The bail paid on the judgment six hundred and fifty dollars. On the same day a copy of the judgment and decree was issued and placed in the hands of the sheriff, who levied upon and sold the mortgaged property to Robert Cox, the replevin bail, for six hundred dollars. Cox refused to pay to the sheriff any more of his bid than was necessary to pay the balance due on the judgment of Gano and others, claiming to retain the residue because of his rights as replevin bail. The sheriff refused to allow such claim, for the reason that he held other executions in his hands against Elihu Cox, upon which he considered it his duty to apply the overplus. The action was by the sheriff against Robert Cox, to recover the amount of his bid. This court held that the replevin bail was only required to pay so much of his bid as was necessary to pay the judgment upon which he was replevin bail, and that he was entitled to retain the residue to reimburse him for the amount that he had paid as such bail. The court, after discussing the nature of the undertaking of replevin bail, say:

" It appears to us the principle involved in these cases is decisive of this; for if, by the act of staying, for a time, execution on a judgment the surety becomes, for some perhaps not clearly defined reason, bound by the terms of the original contract, so far as the remedy thereon is concerned, rather than by the law of the remedy in regard to contracts at the date at which he becomes a party; then we cannot see why, under this broad statute, he should not have the benefit of the like remedy. The judgment, notwithstanding payment to the creditor, remains 'in force' and 'shall not be discharged;' against whom shall it thus operate? It must be against the principal debtor, and that the surety is subrogated to the rights of the creditor. By this process the liens of intervening creditors would be postponed. That is, a judgment junior to the one thus stayed, although entered at a date anterior to the time when the older judgment was stayed, might be thus postponed for the rights of the bail upon said elder judgment. If this is the fair con-

struction of this statute, and, in view of the previous decisions we suppose it is, we do not see that it could work any hardship to a junior incumbrancer. The senior judgment would be a superior lien upon the debtor's property— would have to be first satisfied. The fact that the day of such satisfaction, from such property, should be delayed by staying the execution, can not, in view of numerous decisions relative to the laws controlling the remedy, substantially affect the rights of any creditor. Then if the judgment is not paid, the property is swept off from the junior creditors to satisfy the same; if the bail pays it and the property goes for his benefit, it is at last but in discharge of that superior lien, to which, under this construction, such bail had a right to look when he became a party."

The law is stated as follows in the American Notes to 1 White & T. Leading Cases in Equity, pp. 144, 145 :

" Moreover, as soon as the surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor holds against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done : for the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies and securities of the creditor; as substituted in the place of the creditor, and entitled to enforce all his liens, priorities, and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge: See *Lidderdale* v. *Robinson*, 2 Brockenbrough, 160, 167 ; S. C., 12 Wheaton, 594, 596 ; *M'Mahon* v. *Fawcett*, 2 Randolph, 514, 530 ; *Hampton* v. *Levy*, 1 McCord Ch. 107, 117 ; *Perkins* v. *Kershaw*, 1 Hill Ch. 344, 351 ; *Railroad Co., etc.,* v. *Claghorn*, Speers Eq. 547, 561 ; *Loud* v. *Sergeant*, 1 Edw. Ch. 164, 168 ; *Elwood* v. *Deifendorf*, 5 Barbour, 399, 413 ; *Lathrop and Dale's Appeal*, 1 Pa. St. 512, 517 ; *Atwood* v. *Vincent*, 17 Conn. 576, 583 ; *Hardcastle* v. *Commercial Bank of Delaware*, 1 Harring. Del. 374, note ; *Burk* v. *Chrisman*, 3 B. Mon. 50 ; *Cullum* v. *Emanuel*

*& Gaines,* 1 Ala. 23, 28; *Brown* v. *Lang,* 4 Ala. 50, 53; *Commercial Bank, etc.,* v. *Western Reserve Bank,* 11 Ohio, 444, 449; *Miller* v. *Woodward & Thornton,* 8 Mo. 169, 175; *Hill* v. *Manser,* 11 Grat. 522; *Dechard* v. *Edwards,* 2 Sneed, 93; *Dozier* v. *Lewis,* 27 Miss. 679. 'This right of the surety, says Chancellor KENT, in *Hayes* v. *Ward,* 4 Johns. Ch. 123, 130, 'stands not upon contract, but upon the same principle of natural justice, upon which one surety is entitled to contribution from another:' and the same thing is said in 1 Comst. 599, 600. Payment by one who stands in the relation of a surety, although it may extinguish the remedy, or discharge the security, as respects the creditor, has not that effect as between the principal debtor and the surety. As between them, it is in the nature of a purchase by the surety from the debtor; it operates as an assignment in equity of the debt and of all legal proceedings upon it, and gives a right in equity to call for an assignment of all securities; and, in favor of the surety, the debt and all its obligations and incidents are considered as still subsisting. Those who make themselves answerable for a guaranty or debt subsequently, are as much entitled to the benefit of this rule as if their liability arose from, or was contemporaneous with the original obligation; *Cottrell's Appeal,* 11 Harris Pa. 294; *Haven* v. *Foley,* 19 Mo. 632; the only question being whether the debt has been expressly or impliedly assigned by the creditor, or whether the circumstances are such as to make it his duty to assign it."

Upon the point that the judgment or mortgage is kept alive after the payment by the surety for his benefit, I refer to the following cases: *Howe* v. *Woodruff,* 12 Ind. 214; *Barlow* v. *Deibert,* 39 Ind. 16; *Forbes* v. *Moffat,* 18 Ves. 384; *Gardner* v. *Astor,* 3 Johns. Ch. 53; *Starr* v. *Ellis,* 6 Johns. Ch. 393; *Hatch* v. *Kimball,* 16 Maine, 146; *Holden* v. *Pike,* 24 Me. 427; *Clift* v. *White,* 2 Kern. 519.

"'I take it,' says Lord ELDON, 'to be exceedingly clear, if at the time a bond is given a mortgage is also made for securing the debt, the surety, if he pays the bond has a right

to stand in the place of the mortgagee; and, as the mortgagor cannot get back his estate again without a conveyance, that security remains a valid and effectual security, notwithstanding the bond debt is paid :' *Copis* v. *Middleton*, T. & R. 224. And it is immaterial that the surety is not aware of the existence of the mortgage: *Mayhew* v. *Crickett*, 2 Swanst. 185 ; *Scott* v. *Knox*, 2 Jones, 778." 1 White & T. Lead. Cas. 86.

"Moreover, as soon as the surety has paid the debt, an equity arises in his favor to have all the securities, original and collateral, which the creditor holds against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done : for the purpose. of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies and securities of the creditor; as substituted in the place of the creditor and entitled to enforce all his liens, priorities, and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge." "Those who make themselves answerable for a guaranty or debt subsequently, are as much entitled to the benefit of this rule as if their liability arose from, or was cotemporaneous with the original obligation." 1 White & T. Lead. Cas. 144, 145. " ' From the cases,' says KENNEDY, J., in *Lathrop and Dale's Appeal*, 1 Pa. St. 512, ' it would appear that we have adopted the general rule, that a surety by paying the debt of his principal becomes entitled to be subrogated to all the rights of the creditor, so as to have the benefit of all the securities which the creditor had for the payment of the debt, without any exception, as well those which became extinct, at law at least, by the act of the surety's paying the debt, as all collateral securities which the creditor held for the payment of it, which have not been considered as directly extinguished by the surety's paying the debt.'

"If a surety for the purchase-money, upon a sale of land, pays the debt, he is entitled to be subrogated to the ven-

dor's lien for unpaid purchase-money." 1 White & T. Lead. Cas. 149, and authorities cited.

"It is an established principle of equity," said in *Eddy* v. *Traver*, 6 Paige, 521, "that sureties, or those who stand in the situation of sureties for those for whom they pay a debt, are entitled to stand in the place of the creditor or to be subrogated to all his rights as to any fund, lien, or equity which he may have against any other person or property on account of the debt."

"A surety paying a debt secured by mortgage, is entitled to be substituted to the creditor's interest and lien under the mortgage, both when the surety is a joint mortgagor with the principal, and where the mortgage is against the principal's property only, and the surety's obligation is collateral." 1 White & T. Lead.Cas. 150, and authorities cited; and again, p.153, "It may moreover be remarked, in general, that the right of subrogation extends beyond the mere ordinary and familiar relation of principal and surety, to every instance in which the position of the two parties is such as to render one of them primarily liable for a debt which is a charge on the person or estate of the other, because under these circumstances payment will give the latter a right to enforce all the remedies of the creditor against the former, or, in other words, entitle him to subrogation." It extends to all cases where one is compelled to pay a debt which should, in equity and good conscience, have been paid by another. *Morris* v. *Oakford*, 9 Pa. St. 498.

"Hence a guarantor or surety will be equally entitled to the benefit of all the remedies and securities for the debt, whether he becomes responsible at the request of the creditor or debtor."

If a surety in a bond to the United States pays the debt, he is entitled to the same preference over the other creditors as the United States had. *United States* v. *Hunter*, 5 Mason, 62; *Hunter* v. *The United States*, 5 Peters, 173; *United States* v. *Preston and Bunker*, 4 Wash. C. C. 446; *Dias* v. *Bouchaud*, 3 Edw. Ch: 485; *Enders* v. *Brune*, 4 Randolph, 438;

*Grider* v. *Payne*, 9 Dana, 188; *Bank* v. *Adger*, 2 Hill Ch. 262; *Schoolfield's Adm'r* v. *Rudd*, 9 B. Mon. 291.

It is generally settled in this country, that a surety paying the debt is entitled to be subrogated to a judgment or decree against the principal and to have the benefit of its lien upon his land, in preference to subsequent judgment creditors, and of its priority in the distribution of personal assets, and of being permitted to file a creditors' bill in his own name to obtain satisfaction out of assets which could not be reached by execution; and this whether the judgment or decree is against the principal or the principal and surety jointly. *Watts* v. *Kinney*, 3 Leigh, 272; *Speiglemyer* v. *Crawford*, 6 Paige, 254; *Clason* v. *Morris*, 10 Johns. 524; *Thomson* v. *Palmer*, 3 Richardson Eq. 139; *Rodgers* v. *M'Cluer's Adm'rs*, 4 Grat. 81; *M'Clung* v. *Beirne*, 10 Leigh, 394.

It is expressly provided by statute in this State, that the payment of a judgment by a surety shall not discharge the judgment, but that it shall remain in force for the use of the surety, etc. Sec. 676, 2 G. & H. 309.

Let us make an application of these principles to the case in judgment. In the opinion of the majority of the court it is conceded that "when a surety has paid the debt of his principal he has the right to claim the benefit of any securities which were in the hands of the creditor;" but an effort is then made to show that such rule does not apply to this case. It is said: "But that is not quite the rule which counsel seek to have applied to this case. They claim that when a surety has paid only a part of the debt, he can have the money thus paid by him refunded out of the securities in the hands of the creditor, whether the creditor has received the residue of his debt or not. The several notes secured by the mortgage in this case must, we think, be regarded as but one debt with reference to the rule in question."

It is in a subsequent part of the opinion stated, that if Kiphart had continued to hold all three of the notes secured by the mortgage, and had obtained a judgment at law on the first note, and if the appellee had become replevin bail

thereon, and had been compelled to pay such judgment, he could not have been subrogated to the rights of Kiphart under the mortgage.

No such a question arises in the record, and the court was not called upon to pass on it; but to my mind there is a very satisfactory answer to it. If Kiphart had continued to own all three of the notes, the mortgage given to secure them would have been regarded and treated as one mortgage to secure all three notes, and the notes would have been regarded as one debt, and until the mortgagee had received all of the debt secured by his mortgage, he could not have been required to surrender such mortgage to a surity who had paid a part of the debt secured thereby. Until the debt was paid, the mortgage belonged to the mortgagee. But in the light of the authorities hereinbefore cited, there can be no room to doubt that if the appellee had paid the entire debt secured by the mortgage, he would have been subrogated to all the rights of the mortgagee in the mortgage.

I return to consider the other proposition which is stated with so much doubt and hesitancy, and that is, that all three of the notes are to be regarded as one debt. That, in my judgment, is the fallacy which underlies the entire opinion. It is false logic. It assumes that to be true which can not be supported on principle, and is in direct conflict with a long and unbroken line of decisions in this State, extending from the case of *The State Bank* v. *Tweedy*, in 8 Blackford, down to the present time. There is no conflict in the rulings on this point in this court. They are all in entire accord. The principle clearly and unmistakably laid down in these cases is, that when a mortgage is given to secure several notes, which fall due at different times, and the mortgagee assigns all of such notes to different persons or assigns a part and retains a part, the mortgage by such assignment ceases to be one mortgage and becomes several, and is treated as successive mortgages, and the assignment of the notes transfers to the holders thereof the mortgage, and they

have priority according to the order in which the notes mature. When such severance takes place they have the same force and effect as though separate mortgages had been given to secure three or more notes, having no connection with each other and as though they were executed at different times and based upon different considerations. If I am correct in this, then the opinion of the court must be wrong, for the decision can only be sustained on the theory that the three notes represented but one debt, and that the mortgage remained one and did not become successive mortgages. It seems plain and obvious to me that the decision of the court is in plain and irreconcilable conflict with the numerous decisions of this court, hereinbefore cited, holding that when a mortgage is given to secure several notes, and such notes or a part of them are assigned and held by different persons, the notes become several, and the mortgage is treated as so many successive mortgages. Assuming such position to be impregnable, let us apply the principles of law arising therefrom to the case in judgment. The case will, in legal effect, be this: Terhune gave to Kiphart three mortgages to secure three several notes. The mortgages are executed on three different days, and are recorded in the order of their execution. Kiphart assigns the note secured by the first mortgage to Norman, which carries with it the mortgage. Norman elects to take a judgment at law upon the note, reserving the right to resort to his mortgage if he fails to make his debt out of the other property of the mortgagor. In pursuance of the authority conferred by positive statute, replevin bail is entered. Norman now has three securities for his debt: 1. The personal liability of the principal debtor. 2. The liability of the replevin bail. 3. The mortgage given to secure this particular debt. The bail pays the debt which in justice and equity his principal should pay. It is provided by statute, as we have seen, that such payment does not extinguish the judgment as between the principal debtor and his surety, but that it remains in full force for the use of the surety. But the surety alleges and

proves that his principal is hopelessly insolvent, and that he can not be reimbursed by taking out execution on the judgment. Norman having secured his debt without resorting to his mortgage, the principles of equity, founded in natural justice, require that the surety should be "considered as at once subrogated to all the rights, remedies, and securities, of the creditor, and entitled to enforce all his liens, priorities, and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge." If the principal debtor and the bail had proved insolvent, Norman could have foreclosed his mortgage and sold the equity of redemption, and the holders of junior mortgages would not have been heard to object, and the bail, having paid the debt, is substituted in the place of the creditor. In *Mathews* v. *Aikin*, 1 Comst. 595, the court say : " In the present case it seems to me, if it were necessary, a court of equity ought to imply a promise on the part of the creditor to subrogate the surety to all his rights and remedies, in case he resorted to the latter for payment of the debt upon his guarantee. The equitable obligation resting upon him to do so seems to me most manifest."

And this leads me to inquire, who is objecting to the substitution? It is neither the principal debtor nor the original creditor or his assignee, to whom the note and mortgage were transferred. Then, who can be heard to object? The objection is raised by one who claims title through and under a subsequent mortgage, in the foreclosing of which neither the legal nor equitable owner of the first and prior mortgage was a party. Upon what principle of justice or equity can the holder of a junior mortgage object to the foreclosure of a prior and paramount mortgage? It is expressly declared, in the case referred to in 8 Blackf. and in all the long line of cases following the ruling in that case, that the owner of the note first falling due has a prior and paramount lien over the holders of the subsequent notes, and this is the rule whether the notes are in the hands of the payee or assignee. Each

note has priority according to its time of becoming due. This has heretofore been the firmly settled and well known rule in this State, but by the judgment pronounced in this case by a majority of the court, this rule is in legal effect destroyed; for the effect of the judgment is to give to the owner of the second note priority over the owner of the first, and this is done, although the rule was laid down in 1847, and has been firmly adhered to ever since, that the holder of a second or subsequent note holds the same, " subject to the paramount claim of notes previously due."

Nor does the decision of the majority of the court stop here, but it goes a step further and holds that the three notes in the present case are to be regarded as one debt, when it has been repeatedly decided by this court, that there might be a foreclosure where any one of several notes is due, and when it was expressly decided in *Crouse* v. *Holman*, 19 Ind. 30, that where a mortgage was given to secure several notes becoming due at different times, the notes were to be regarded as so many successive causes of action.

The cases of *Belcher* v. *The Hartford Bank*, 15 Conn. 381, and of *The Stamford Bank* v. *Benedict*, 15 Conn. 437, have no application to the present case. The facts in the case first cited were these:

Henry Kilbourn and the firm of Kilbourn & Wolcott, of which Henry Kilbourn was one, were the makers of several promissory notes made payable at the Hartford Bank. They were all indorsed by Charles Whiting & Co., for the accommodation of Kilbourn. The plaintiff was a subsequent indorser of three of these notes, which amounted to the sum of three thousand five hundred dollars. All the notes indorsed by Charles Whiting & Co. were the property of the Hartford Bank. Afterward Kilbourn mortgaged his interest in certain lands to Charles Whiting, one of the firm of C. Whiting & Co., as security for the indorsement of said notes. This mortgage was made at the solicitation of Whiting, and by an arrangement between him and the bank, and was intended by him especially as security to the bank for

all the notes held by them, as well the three notes indorsed by the plaintiff, as the others ; although Kilbourn, when he executed the mortgage, knew nothing of the arrangement between Whiting and the bank. Whiting, in pursuance of said understanding, assigned the mortgage to the bank. The plaintiff was duly charged and became liable as endorser, upon the notes indorsed by him, and had paid the amount of them to the bank, and there remained due to him from Kilbourn, for moneys so paid, the sum of two thousand eight hundred and fifty-seven dollars and thirty-one cents. The Hartford Bank had foreclosed the mortgage and had received the whole avails of it, which, however, proved insufficient to pay the whole, after applying the amount paid by the indorser, and there remained still due of that debt the sum of four hundred dollars. The object of the suit was to compel the bank to contribute of the avails so received by them, and pay to the plaintiff, who was the indorser of three of the notes secured by the mortgage, of the sum received on the mortgage, such proportion as the amount of the money paid by him to the bank bore to the whole sum realized from the mortgage security. The court held that he could not recover, because "his equity as indorser or surety was merely collateral, growing out of the acts of the other parties, and can exist only after the whole fund or security has been first applied to the whole debt due to the bank, and can attach only upon the surplus remaining with the bank, after its entire demand shall be satisfied."

In my judgment the ruling in that case was correct, and in no manner conflicts with the views hereinbefore expressed. There, the mortgage was given to secure the entire debt, while here the mortgage in the hands of Norman stood as a separate and prior security for the note assigned to him, on which he had obtained a judgment upon which the appellee had become replevin bail. There, the mortgage had been foreclosed by the bank and the entire avails applied to the payment of the debt, and after such application, and that paid by the surety, there remained due of the debt four hun-

dred dollars, while here the mortgage was not foreclosed, but the entire debt secured by such mortgage was paid by the replevin bail, the mortgage fund or security remaining undisposed of in the hands of Norman. These two facts clearly distinguish that case from the one under consideration. But the principle decided in that case was, that the surplus of the mortgage fund, remaining after the payment of the debt, belonged in justice and equity to the surety. In the present case, the entire mortgage security remained after the debt was paid, and should be applied to reimburse the surety. This would do no injustice to the holders of the second note, for they held subject to the prior and paramount claim of the holder of the first note, and, as was said by this court in *Colgrove* v. *Cox*, 22 Ind. 43, that if the replevin bail had not paid the judgment, the mortgage security would have been resorted to and the mortgaged property would have been taken from them, or they would have been driven to redeem to secure the benefit of their security.

In the other case cited in 15 Conn., the same question, with some others, that have no application to the present case, was involved and decided.

The case of *Union Bank* v. *Edwards*, *supra*, was almost identical in all its facts and questions of law. There, the principal debtor gave the bank a mortgage on real estate to secure the entire debt, and Mrs. Edwards became indorser on a part of the debt, and she, having been compelled to pay the notes indorsed by her, sought to be subrogated to the rights of the bank in the mortgage ; but it was held that she could not be substituted because she had no equity until the bank had been paid. The court, however, fully recognized the justice and equity of substitution. The court say :

"The taking of a mortgage by the creditor from the principal debtor is calculated to inspire the surety with confidence. He is thereby induced to relax in his vigilance; and to forbear obtaining a sufficient guaranty as an indemnity against his eventual liability. Such a mortgage becomes a trust for the direct interest of the creditor, and also, for

the direct interest of the surety. From such circumstances, therefore, an equity arises, that the creditor shall not invalidate or by any wilful act vitiate his mortgage security to the prejudice of the surety. And also, because the surety, should he be compelled to pay the debt, has a right to call upon the creditor to be put into his place, in all respects ; since, in equity, on such an event, he becomes entitled to be considered as the substitute of the creditor; and to have the mortgage, and all other securities given by the principal debtor, assigned to him. And this right of the surety stands not upon anything expressed in the contract, but is based upon the principles of natural justice."

In the case of *Kyner* v. *Kyner, supra,* the right of subrogation was fully acknowledged, but it was held that the party seeking substitution was not entitled to it, because the creditor had not been paid.

It is stated in Dixon on Subrogation, that "the right of subrogation can not be enforced by a surety until the whole debt is paid." If I am right in the position heretofore taken, that Norman was to be regarded as the holder of a first and prior mortgage to secure the note assigned to him, then the above authorities are strongly in favor of such position; for in that case the whole debt was paid without a resort to the mortgage security, and the person paying it was, according to "the principles of natural justice," entitled to be substituted to all the rights and securities of the creditor.

In the case of *Armstrong's Appeal, supra,* it was held that a replevin bail was not to be regarded as a surety and entitled to be subrogated. But it is expressly provided by statute in this State, that a replevin bail is a surety and entitled to all the rights and equities of a surety, and this court has, in numerous instances heretofore cited, held the same doctrine.

It is said in the opinion of the majority of the court, that "the fact that the judgment was replevied may have prevented the judgment plaintiff from making the money out of the estate of the judgment defendant, not covered by the mortgage, which he had the right to do on the personal judgment."

I confess my inability to comprehend the purpose of the above statement. I deny that the judgment plaintiff had any right to relax his efforts to collect the judgment from the principal debtor; for having resorted to an action at law, instead of foreclosing his mortgage, he was bound to use due diligence to make his debt. It is laid down in the case of *Union Bank* v. *Edwards, supra,* that "the creditor shall not invalidate or by an wilful act vitiate his mortgage security to the prejudice of the surety." It is said in *Colgrove* v. *Cox, supra,* that the junior creditors had no right to complain of the stay of execution or that the replevin bail had paid the judgment, for if he had not paid it, the mortgage would have been foreclosed and the property sold from them. The statute having given the right to replevy a judgment, and this court having held that such bail was a surety, I am at a loss to see how a party is to be prejudiced by doing what the statute says he may do.

Besides, it was abundantly proved upon the trial that Terhune was hopelessly insolvent, aside from the mortgaged property, from the time the mortgage was given down to the commencement of this action. Nothing, therefore, could have been made out of the other property of Terhune, and consequently Norman was not prevented from making his judgment out of property of Terhune not covered by the mortgage; and if he had been, the appellant would have had no right to complain of it.

In my opinion the judgment should be affirmed.